Charles **BUNTON**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 03–03–00017–CR.

Court of Appeals of Texas, Austin.

May 13, 2004.

Connie J. Kelley, Austin, TX, for Appellant.

C. Bryan Case, Jr., Assistant District Attorney, Austin, TX, for Appellee.

Before Justices KIDD, B.A. SMITH and ONION.*

## OPINION

JOHN F. ONION, JR., Justice.

Appellant appeals his state jail felony conviction for evading arrest by use of a vehicle. *See* Tex. Pen.Code Ann. § 38.04(b)(1) (West 2003). The alleged offense became an aggravated state jail felony under section 12.35(c)(1) by allegation, proof, and an affirmative finding by the jury of the use of a deadly weapon, a motor vehicle, during the commission of the offense. *See* Tex. Pen.Code Ann. § 12.35(c)(1) (West 2003). Upon subsequent proof of the two prior felony convictions alleged for enhancement of punishment, the trial court submitted to the jury the range of punishment under section 12.42(d) of the Texas Penal Code, the habitual criminal statute.[1] The jury assessed punishment at thirty years' imprisonment.

## Points of Error

Appellant advances nine points of error in the form of questions. When this occurs, it is often difficult for the appellate court to revise and restate the issues without losing something in the translation. Some of appellant's issues are new or novel. We have chosen to use appellant's own questions to demonstrate what has been presented for resolution. A tenth point of error has been added by supplemental brief.

### QUESTION NO. ONE

Was it error to interpret P.C. § 12.42(d) as being applicable to appellant's state jail felony conviction?

### QUESTION NO. TWO

Had there been sufficient notice of the State's intention to seek to have appellant punished as a habitual offender, to authorize an instruction in the jury charge giving the applicable punishment range as 25–99 years or life?

### QUESTION NO. THREE

Did appellant receive multiple punishments in violation of the double jeopardy clause of the U.S. Constitution when his punishment which had been enhanced under P.C. § 12.35(c)(1) was further enhanced under P.C. § 12.42(d)?

### QUESTION NO. FOUR

Was testimony of extraneous offenses and bad conduct which were not shown to have been reported to law enforcement before or during police attempts to

---

* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).

1. *See* Tex. Pen.Code Ann. § 12.42(d) (West 2003).

stop the driver of the fleeing vehicle relevant under T.R.E., rule 401?

## QUESTION NO. FIVE

Did testimony of extraneous offenses and bad conduct which were not shown to have been reported to law enforcement before or during police attempts to stop the driver of the fleeing vehicle violate T.R.E., rule 404(b)?

## QUESTION NO. SIX

May a witness testify to the substance of a conversation with a nontestifying witness who alleged that appellant made certain statements, when the testifying witness has no firsthand knowledge that such statements were ever made?

## QUESTION NO. SEVEN

Was evidence of an extraneous offense relevant when such offense was separate from and prior to the alleged assault which was the basis of police involvement?

## QUESTION NO. EIGHT

Was it error under C.C.P., rule 404(b) for the court to admit evidence of an extraneous offense which was separate from and prior to the alleged assault which was the basis of police involvement?

## QUESTION NO. NINE

Was the evidence factually sufficient to support the finding that appellant used or exhibited a deadly weapon during the course of the offense?

**2.** It was later established that the automobile

### Point of Error Ten

After the submission of this cause, appellant filed a motion to supplement his brief and add another point of error. The motion was granted. The tenth point of error, germane to Question No. 6, asserts:

Appellant was deprived of his rights to confront and cross-examine the witnesses when the trial court allowed a police officer to testify what a nontestifying witness, Tony Rogers, told him during the course of the investigation.

We will affirm the judgment of conviction.

### Background

Appellant does not challenge the legal sufficiency of the evidence to support the conviction and makes only a limited factual sufficiency claim. A brief recitation of the facts, however, will place the points of error in proper perspective.

On the night of January 11, 2002, Austin Police Officer Alvin Rhoden responded to a call about a man with a gun. He arrived at 8202 Riverstone, Apartment A, in Austin after eleven o'clock. Rhoden talked to Rose Presley, the occupant of the apartment, then to Armando Zamore, who said that he had been pistol whipped in the face. Rhoden also talked to Tony Rogers, who was at the scene at the time of the reported incident. The suspect's name was given as Charles Mason. Rhoden reported that he learned that the suspect left the Riverstone address in a cream colored or white two-door El Dorado Cadillac automobile [2] with chrome blade rims (wheel covers). The license plate number given was L54–CSG. The male suspect was described as weighing 240 pounds, dressed in black pants, white T-shirt, and checkered flannel jacket. This information was forwarded to the dispatcher.

was a 1993 model.

Officer Leif Eric Guevara was on patrol on the night in question when he received the description of the suspect, the vehicle, and the license plate number. Shortly thereafter, at the intersection of Springdale and Martin Luther King, he observed a vehicle that fit the description given with the license plate number L54–GSG. He knew citizens often confuse G and C in reporting license plate numbers. Officer Guevara drove past the Cadillac and determined that the driver matched the description of the suspect. Guevara turned his patrol unit around, turned on its overhead lights, and caused the Cadillac to pull over. Guevara then waited for a back-up unit that soon arrived driven by Officer Nathan Flippin. Both officers got out of their patrol units with their weapons drawn, as the suspect had been reported to be armed. As they approached the Cadillac, Guevara gave certain commands to the driver in order to effectuate the stop or arrest. In the midst of these instructions, the man drove off in the Cadillac. The officers returned to their units and gave chase. Guevara testified that appellant ran a red light at the intersection of Springdale and 51st Streets. Officer Flippin filmed the chase with his car video camera. He testified that his vehicle reached speeds of 100 miles per hour during the chase. After some distance, the chase was unsuccessfully terminated. Guevara later made an in-court identification of appellant as the driver.

The police discovered that Charles Mason was not appellant's name. By investigation and use of a computer assisted dispatch system (CAD), Detective Allen Hicks learned that appellant's name was Charles Bunton. Appellant was arrested on March 21, 2002 at a pawn shop at 4700 South Congress. He tried to leave the scene in a green or lime green Cadillac and bumped into a police vehicle before he was apprehended. An investigator for the district attorney's office determined that the impounded Cadillac had been repainted from its original color. Other testimony revealed that vehicle identification number (VIN) of the Cadillac was GCEL12B9PU604489 and this was the VIN on the vehicle to which the Texas license plate L54–GSG had been issued. Evidence was offered that no two VINs are alike.

Appellant called Armando Zamora to testify. He was not a fact witness to the offense of evading arrest, but the victim of the aggravated assault out of which the instant offense arose. Zamora, who was about to leave for prison as a result of a conviction for robbery by assault, related that appellant had hit him, but he did not know whether it was a gun, a fist, or a shoe. Zamora said he and appellant were "homeboys," and that appellant had helped him get off of drugs, though he still was using drugs at the time of the assault.

Appellant testified that he was at the Riverstone address on January 11, 2002, but he was driving his red Mustang automobile; that it was his friend, Emilio Rodriguez, who drove off in the Cadillac. Appellant revealed that it was early the next morning, about 4:30 a.m., when Emilio called him and told him of the police chase.

Appellant testified that Zamora lied about what happened, but then confessed that he had hit Zamora because Zamora had stolen $5,000 from him. Appellant denied that a pistol or gun had been used. Appellant acknowledged that he had previously been convicted of the two prior felony convictions alleged—aggravated assault on a correctional officer and attempted burglary of a habitation. He also admitted convictions for theft and an assault on a woman.

## Applicability of the Habitual Criminal Statute to State Jail Felonies

■ By virtue of his first question, appellant claims that the trial court erred in

interpreting section 12.42(d), the habitual criminal statute, as being applicable to the instant state jail felony conviction. Appellant urges that fundamental error was committed in the jury charge at the punishment phase of the trial when the jury was authorized to fix punishment under section 12.42(d). *See Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (op. on reh'g).[3]

▪ The legislature has the constitutional authority to define crimes and fix penalties. *See Frieling v. State,* 67 S.W.3d 462, 468 (Tex.App.-Austin 2002, pet. ref'd). In accordance with that "authority," section 38.04 of the Penal Code has been enacted defining the offense of evading arrest. *See* Tex. Pen.Code Ann. § 38.04

(West 2003). Basically, the offense is a class B misdemeanor, *see* § 38.04(a), with the range of punishment being confinement in the county jail for a term not to exceed 180 days and a fine not to exceed $2000. *See* Tex. Pen.Code Ann. § 12.22 (West 2003). Section 38.04 is a complex statute, however, providing for the elevation, enhancement, or upgrading of the offense itself to different degrees or levels of felony offenses depending on certain circumstances.[4] When the offense is upgraded, the punishment then applicable will come into play provided the proper proof is offered.

Appellant was indicted for evading arrest while using a motor vehicle in flight, a state jail felony, under section 38.04(b)(1).

---

**3.** *Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim.App.1984) (op. on reh'g), states:

> After researching Texas statutory and decisional law from 1857 forward, we have concluded that Article 36.19 actually separately contains the standards for *both* fundamental error and ordinary reversible error. If the error in the charge was the subject of a timely objection in the trial court, then reversal is required if the error is "calculated to injure the rights of defendant," which means no more than that there must be *some* harm to the accused from the error. In other words, an error which has been properly preserved by objection will call for reversal as long as the error is not harmless.

> On the other hand, if no proper objection was made at trial and the accused must claim that the error was "fundamental," he will obtain a reversal only if the error is so egregious and created such harm that he "has not had a fair and impartial trial"—in short "egregious harm."

> In both situations the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole.

**4.** Article 38.04 provides:

(a) A person commits an offense if he intentionally flees from a person he knows is a peace officer attempting lawfully to arrest or detain him.

(b) An offense under this section is a Class B misdemeanor, except that the offense is:

(1) a state jail felony if the actor uses a vehicle while the actor is in flight and the actor has not been previously convicted under this section;

(2) a felony of the third degree if:

(A) the actor uses a vehicle while the actor is in flight and the actor has been previously convicted under this section; or

(B) another suffers serious bodily injury as a direct result of an attempt by the officer from whom the actor is fleeing to apprehend the actor while the actor is in flight; or

(3) a felony of the second degree if another suffers death as a direct result of an attempt by the officer from whom the actor is fleeing to apprehend the actor while the actor is in flight.

(c) In this section, "vehicle" has the meaning assigned by Section 541.201, Transportation Code.

(d) A person who is subject to prosecution under both this section and another law may be prosecuted under either or both this section and the other law.

Tex. Pen.Code Ann. § 38.04 (West 2003).

In addition, the indictment also alleged the use of a motor vehicle as a dangerous weapon in the commission of evading arrest.[5] Still further, the indictment alleged two prior felony convictions for enhancement of punishment, one for aggravated assault on a correctional officer and another for an attempt to commit a burglary of a habitation.

At the guilt/innocence stage of the trial, the trial court submitted to the jury the state jail felony offense under section 38.04(b)(1) and a special issue as to whether appellant used a deadly weapon, a motor vehicle, in the commission of the offense. The jury found appellant guilty and answered the special issue in the affirmative. The trial proceeded to its punishment phase where the prior felony convictions alleged came into play.

The punishment range for convictions of state jail felonies are set forth in section 12.35 of the penal code. The statute provides:

(a) Except as provided by Subsection (c), an individual adjudged guilty of a state jail felony shall be punished by confinement in a state jail for any term of not more than two years or less than 180 days.

(b) In addition to confinement, an individual adjudged guilty of a state jail felony may be punished by a fine not to exceed $10,000.

(c) An individual adjudged guilty of a state jail felony shall be punished for a third degree felony if it is shown on the trial of the offense that:

(1) a deadly weapon as defined by Section 1.07 was used or exhibited during the commission of the offense or during immediate flight following the commission of the offense, and that the individual used or exhibited the deadly weapon or was a party to the offense and knew that a deadly weapon would be used or exhibited; or

(2) the individual has previously been finally convicted of any felony:

(A) listed in Section 3g(a)(1), Article 42.12, Code of Criminal Procedure; or

(B) for which the judgment contains an affirmative finding under Section 3g(a)(2), Article 42.12, Code of Criminal Procedure.

Tex. Pen.Code Ann. § 12.35 (West 2003).

It is to be observed that the statute specifies the punishment for regular or non-aggravated state jail felonies in section 12.35(a) and for aggravated state jail felonies meeting the criteria set out in section 12.35(c).[6]

■ In the instant case, appellant was convicted of a state jail felony of evading arrest under section 38.04(b)(1). The nature of the offense never changed but because of the jury's affirmative finding of the use of a deadly weapon during the commission of the offense, the offense became an aggravated state jail felony punishable under section 12.35(c) with possible punishment being equivalent to a third degree felony. The state jail felony of which appellant was convicted did not, however, become a third degree felony. This was the status of the case when the punishment phase of the trial began.

---

5. Appellant does not claim that he was not given sufficient notice that the State would seek to secure an affirmative finding that a deadly weapon was used or exhibited in the commission of the offense.

6. The legislature has explicitly provided for certain forms of "multiple enhancements" of state jail felonies (i.e., enhancement of both offense and punishment). *See State v. Webb,* 12 S.W.3d 808, 811 (Tex.Crim.App.2000).

At the penalty hearing, that part of the indictment alleging the two prior felony convictions was read to the jury. Appellant pleaded "true" to these allegations. In its jury charge, the trial court authorized the jury to assess punishment for life, or any term of years not more than 99 years or less than 25 years if the jury found beyond a reasonable doubt that appellant had been previously convicted as alleged. It is this charge that appellant claims was fundamentally defective because section 12.42(d) does not apply to convictions for state jail felonies of any kind.

Section 12.42(d) provides:

> If it is shown on the trial of a felony offense other than a state jail felony punishable under section 12.35(a) that the defendant has previously been finally convicted of two felony offenses and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction he shall be punished by imprisonment in the institutional division of the Texas Department of Criminal Justice for life or for any term of not more than 99 years or less than 25 years.

Tex. Pen.Code Ann. § 12.42(d) (West 2003).

■ It is clear that the legislature could have exempted all state jail felonies from the habitual criminal status in section 12.42(d). The legislature, however, expressly exempted only those state jail felonies punishable under section 12.35(a), often described by case law as non-aggravated offenses. By doing so, the legislature made aggravated state jail felonies punishable under the provisions of section 12.35(c) subject to the habitual criminal provisions of section 12.42(d).

■ Under our approach to statutory interpretation, we look to the literal text of the statute for its meaning, and we ordinarily give effect to that plain meaning, unless application of the statute's plain language would lead to absurd consequences that the legislature could not possibly have intended, or if the plain language is ambiguous. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim.App.1991); *see also State v. Webb*, 12 S.W.3d 808, 811 (Tex.Crim.App.2000). A reading of the literal text of section 12.42(d) does not reflect that its plain language is ambiguous or that it would lead to an absurd result the legislature could not have possibly intended.

Therefore, we find no merit in appellant's claim that fundamental error occurred in the jury charge at the punishment phase of the trial when the trial court instructed the jury on the range of punishment under section 12.42(d). There was no error so egregious as to deprive appellant of a fair and impartial trial. Appellant makes a strong policy argument that section 12.42(d) should never apply to a state jail felony conviction. That is a legislative matter, not one for the judiciary. The first point of error is overruled.

### Sufficient Notice

■ In a related contention, appellant, in his second point of error, raises a question of whether sufficient notice was given by the State that it would seek to have appellant punished as a habitual offender. Appellant claims the notice was insufficient so that the range of punishment under section 12.42(d) was not authorized in the jury charge at the punishment phase of the trial.

At the conference on the jury charge at the punishment phase of the trial, the record reflects:

MR. KOHLER

[Defense Counsel]: Yes, we would object to the first paragraph, the enhancement to habitual, the 25 to 99 or life. Mr. Bunton has pointed out to me that—one point was that the caption of the indictment merely says enhanced and does not say habitual and, therefore, did not have a fair notice of the—

THE COURT: Okay. I think the law is well settled that what's up with that level in the caption is of no import and is not ever read to the jurors, and the jurors are unaware of it. So there's no chance that they would be confused. But the record will reflect Mr. Bunton and his counsel's objection.

If it can be said that appellant obtained an adverse ruling so as to preserve error, *see* Tex.R.App. P. 33.1, appellant has not briefed the trial objection presented in accordance with our briefing rules. *See* Tex. R.App. P. 38.1.

■ Appellant now urges that the allegations of two prior felony convictions on the face of the indictment did not give him the sufficient notice required. Appellant acknowledges that the contrary is true in *non*-state jail felony cases. *See Ex parte Beck,* 769 S.W.2d 525, 527 (Tex.Crim.App. 1989). Nevertheless, he argues that in all state jail felony cases some additional notice must be given because of the uncertainty among the bench and bar as to the applicability of section 12.42(d) to state jail felonies. Appellant cites no authority holding that additional notice of the State's intention must be given in state jail felony cases. Moreover, this is not the trial objection presented. A complaint on appeal must comport with the trial objection or nothing is presented for review. *See Rezac v. State,* 782 S.W.2d 869, 870 (Tex. Crim.App.1990).

■ Continuing his argument, appellant urges that based on his trial objection, *Almanza* jury charge error occurred. 686 S.W.2d at 171. He contends that any harm, regardless of degree, is sufficient to require reversal. *See Hutch v. State,* 922 S.W.2d 166, 171 (Tex.Crim.App.1996). In view of all the circumstances presented, there is no merit to this argument. The second point of error is overruled.

### Double Jeopardy

■ In his third point of error, appellant questions whether he received multiple punishments in violation of the "double jeopardy clause of the U.S. Constitution when his punishment which had been enhanced under P.C. § 12.35(c)(1) was further enhanced under P.C. § 12.42(d)." Appellant presents only a federal constitutional question. He has not presented or briefed a state constitutional issue.

The double jeopardy prohibition of the Fifth Amendment to the United States Constitution represents a fundamental ideal in our constitutional heritage and it is applicable to the states by virtue of the Fourteenth Amendment. *See Benton v. Maryland,* 395 U.S. 784, 794–95, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The double jeopardy clause provides:

[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb.

U.S. Const., Amend. V.

■ This clause has been held to protect against successive prosecutions for the same offense after acquittal or conviction and against multiple criminal punishments for the same offense. *See North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). Historically, the double jeopardy protections have been held inapplicable to state sentencing. *See Monge v. California,* 524 U.S. 721, 728, 118 S.Ct. 2246, 141 L.Ed.2d 615 (1998) (citing

*Bullington v. Missouri*, 451 U.S. 430, 438, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981)). This is so because the determinations at issue do not place a defendant in jeopardy for an "offense." *Id.*, 524 U.S. at 728, 118 S.Ct. 2246 (citing *Nichols v. United States*, 511 U.S. 738, 747, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994)). In *Monge*, the Court held that the Fifth Amendment's double jeopardy clause did not extend to California's noncapital sentencing proceeding involving California's "three-strikes" law.

In the instant case, appellant acknowledges that he did not raise the double jeopardy (multiple punishments) question in the trial court, but argues it can be raised for the first time on appeal, citing *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim.App.2000).[7] Because of the circumstances of this case, we deem it unnecessary to resolve the waiver question. As the State points out, there are no multiple punishments or successive prosecutions involved in this case. Appellant was convicted of an aggravated state jail felony that was "punishable" under section 12.35(c)(1) because of the deadly weapon finding, but he was not punished under that statute. He was punished under article 12.42(d) because of the prior convictions alleged and proved. The third point of error is overruled.

### Extraneous Offenses Not Reported to Police Prior to Commission of Charged Offense

In his fourth and fifth points of error, appellant urges there were violations of Texas Rules of Evidence 401 and 404(b) in the admission of evidence of "extraneous offenses and bad conduct which were not shown to have been reported to law enforcement before or during police attempts to stop the driver of the fleeing vehicle."

 The thrust of appellant's argument is directed to the testimony of Rose Presley who lived at 8202 Riverstone, apartment A, where the assault on Zamora occurred. Before Presley testified, appellant requested an instruction limiting Presley's testimony to the issue of probable cause. The State responded that the testimony was "part and parcel to the context of everything." The State, as part of its case, had to prove that the police officers were attempting to *lawfully* arrest or detain appellant at the time of the offense of evading arrest. *See* Tex. Pen.Code Ann. § 38.04(a) (West 2003). The trial court ruled that the prosecution should restrict the testimony as much as possible. Appellant's counsel thanked the court for its ruling. Presley testified as to a threatening telephone call and the assault upon Zamora by appellant.

Appellant now argues that Officer Rhoden later testified that Presley would not talk to him on the night in question; that he obtained most of his information from Zamora; and that it was this information that was passed on to the dispatcher and other officers. Hence, appellant contends that it was not Presley's information that was reported and used as the basis of the attempt to arrest appellant. There was, however, no trial objection on this ground in order to preserve any error. *See* Tex. R.App. P. 33.1. The complaint on appeal must comport with the trial objection or nothing is presented for review. *See Rezac*, 782 S.W.2d at 870. The fourth and fifth points of error are overruled.

7. *See* discussion of *Gonzalez v. State*, 8 S.W.3d 640 (Tex.Crim.App.2000) in 43A George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* § 42.256 (2001); *see also Ramirez v. State*, 36 S.W.3d 660, 666 (Tex.App.-Waco 2001, pet. ref'd); *Beltran v. State*, 30 S.W.3d 532, 533 n. 1 (Tex.App.-San Antonio 2000, no pet.).

## Personal Knowledge and Hearsay

The thrust of appellant's sixth point of error is somewhat confusing. The question advanced by appellant is:

May a witness testify to the substance of a conversation with a nontestifying witness who alleged that appellant made certain statements, when the testifying witness has no first-hand knowledge that such statements were ever made?

 It is observed that appellant's question is limited to testimony concerning appellant's purported statements, not his acts. Further, appellant's concern seems to stem from the lack of personal knowledge on the part of the testifying witness. It appears that appellant is claiming a violation of Rule 602. Tex.R. Evid. 602.[8] A complaint on appeal must comport with the trial objection or nothing is presented for review. See Wilson v. State, 71 S.W.3d 346, 349 (Tex.Crim.App.2002); Rezac, 782 S.W.2d at 870; Hitt, 53 S.W.3d at 706. We find no trial objection based on Rule 602 or the lack of personal knowledge on behalf of the testifying witness (Officer Alvin Rhoden). Nothing was preserved for review on the basis of appellant's question.

We turn now to the objection appellant did make. As noted earlier, Officer Rhoden was investigating a threatening telephone call and the purported assault upon Zamora which occurred prior to the evading arrest offense. On cross-examination, appellant called attention to Rhoden's offense report and elicited from Rhoden that Rose Presley told him at the scene of the assault that a Broderick Moore had made the threatening telephone call. This evidence contradicted earlier evidence that the telephone call had been made by appellant using the name Charles Mason, and contradicted Rhoden's earlier testimony that Presley would not talk to him.

On redirect examination, the prosecutor sought to rehabilitate Rhoden by inquiring about his offense report. The prosecutor established that Presley was angry and upset and did not want to speak with Rhoden, and that Rhoden was not sure Presley had said Broderick Moore was the caller. It was established that Tony Rogers was on the scene at the time of the assault on Zamora and might be related to Moore. The prosecutor then asked Rhoden, "What did you learn at the scene from Tony Rogers?" Appellant objected, "Your Honor, I object as hearsay and relevancy." The prosecutor responded: "It's part and parcel to that he's gone into. It's right next to Broderick Moore and—and for the jury to understand the context of this report, I think it is necessary for them to hear everything Tony Rogers[9] told the officer." The trial court overruled this objection.

Thereafter, Rhoden began a narrative answer to the complained-of question without further objection and without further mention of Broderick Moore.[10] Officer

---

8. Rule 602 (Lack of Personal Knowledge) provides:

A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness. This rule is subject to the provisions of Rule 703, relating to opinion testimony by expert witnesses.

Tex.R. Evid. 602.

9. Tony Rogers did not testify at the trial. He is the "nontestifying witness" referred to by appellant in his stated point of error.

10. The record does not clearly establish who Broderick Moore was. Outside of references to a telephone call, what part Moore may have played in this evading arrest case is not shown.

Rhoden related that Rogers told him that earlier in the evening, he (Rogers) was in the parking lot of a car wash at the intersection of MLK and Airport when appellant, whom he knew as Mason, drove up in a vehicle. Appellant got out of the vehicle with a black handgun, pointed the gun at Rogers's legs and asked where Zamora was. Rogers replied that he did not know. Rogers also told Rhoden that later he was on the Presley premises when appellant arrived and pistol whipped Zamora. On recross-examination, Rhoden stated that he could not be sure who gave him Broderick Moore's name, but he thought it was Presley.

■ Appellant's overruled objection was a general one. Normally, general objections do not preserve error. *McKee v. State*, 855 S.W.2d 89, 91 (Tex.App.-Houston [14th Dist.] 1993, no pet.); *see also Norrid v. State*, 925 S.W.2d 342, 348 (Tex. App.-Fort Worth 1996, no pet.); 43A George E. Dix and Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* § 42.91 (2001) (hereinafter Dix). However, a general objection based on hearsay is sufficiently specific to require appellate review "except under the most unusual circumstances." *Lankston v. State*, 827 S.W.2d 907, 910 (Tex.Crim.App. 1992); *see also Matz v. State*, 14 S.W.3d 746, 747 (Tex.Crim.App.2000); *Long v. State*, 800 S.W.2d 545, 548 (Tex.Crim.App. 1990); *Baxter v. State*, 66 S.W.3d 494, 498 n. 1 (Tex.App.-Austin 2001, pet. ref'd) (citing *Cofield v. State*, 891 S.W.2d 952, 954 (Tex.Crim.App.1994)); Dix, § 42.94.

■ It is not error, however, to admit hearsay evidence in a criminal case over objection when it goes to clarify other hearsay evidence elicited by the opposition. *Martinez v. State*, 749 S.W.2d 556, 559–60 (Tex.App.-San Antonio 1988, no pet.) (citing *Jackson v. State*, 423 S.W.2d 322, 323 (Tex.Crim.App.1968)). This hearsay evidence is admissible under the Rule of Optional Completeness. Tex.R. Evid. 107; *Kipp v. State*, 876 S.W.2d 330, 337 (Tex. Crim.App.1994); *LeBlanc v. State*, 737 S.W.2d 865, 869 (Tex.App.-Houston [14th Dist.] 1987, pet. ref'd).[11] The State's response to appellant's general hearsay objection was similar to that in *Martinez* and *LeBlanc*, where the defense first elicited particular hearsay from the investigating police officer and the State later sought to clarify the hearsay evidence. The trial court did not err in overruling appellant's general hearsay objection. The difficulty that ensued was that Officer Rhoden's answer to the complained-of testimony was new hearsay, not the hearsay the State was entitled to clarify. But there was no objection to this evidence. *See* Tex.R.App. P. 33.1. Even if the trial court erred in overruling the hearsay objection, appellant failed to continue to object as the testimony unfolded. *See Beheler v. State*, 3 S.W.3d 182, 187 (Tex.App.-Fort Worth 1999, pet. ref'd). A party must object each time inadmissible evidence is offered. *See Hudson v. State*, 675 S.W.2d 507, 511 (Tex. Crim.App.1984); Dix, § 42.111. The sixth point of error is overruled.

## Confrontation

Appellant's tenth point of error is germane to the sixth point of error so we will consider it at this juncture. Appellant presented this contention by supplemental

11. *Coots v. State*, 826 S.W.2d 955, 960 (Tex. App.-Houston [1st Dist.] 1992, no pet.), distinguished *Jackson v. State*, 423 S.W.2d 322 (Tex.Crim.App.1968), and *Martinez v. State*, 749 S.W.2d 556 (Tex.App.-San Antonio 1988, no pet.), in situations where the door to the particular hearsay is first opened by the State over objection and the defendant tries to minimize the harm through cross-examination (citing *Valcarcel v. State*, 765 S.W.2d 412, 417–18 (Tex.Crim.App.1989)). Appellant makes no such claim here under this rule.

brief as noted earlier. He contends that he was deprived of his rights to confront and cross-examine witnesses "when the trial court allowed a police officer to testify what a nontestifying witness, Tony Rogers, told him during the course of investigation." This is the same testimony discussed above in point of error six.

Appellant presents only a federal constitutional right to confrontation issue based on the Sixth and Fourteenth Amendments. *See Pointer v. Texas,* 380 U.S. 400, 406, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). Appellant does not present or brief a state constitutional issue. We therefore will not address that issue. *See Black v. State,* 26 S.W.3d 895, 896 n. 4 (Tex.Crim.App.2000); *Martins v. State,* 52 S.W.3d 459, 469 (Tex. App.-Corpus Christi 2001, no pet.).

 We observe at the outset that appellant made no objection to Officer Rhoden's testimony based on his constitutional rights of confrontation being violated. Generally, in order to preserve error, there must be a timely, specific objection to the complained-of testimony. *See* Tex. R.App. P. 33.1. Even constitutional error may be waived by failure to object at trial. *See Briggs v. State,* 789 S.W.2d 918, 924 (Tex.Crim.App.1990). A defendant in fact waives his constitutional right to confront witnesses if he does not object at trial. *See Holland v. State,* 802 S.W.2d 696, 700 (Tex.Crim.App.1991); *Thacker v. State,* 999 S.W.2d 56, 61 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd).

 Appellant did generally object on the basis of hearsay to the question asked by the prosecutor of Rhoden. The hearsay objection did not preserve error

on a confrontation claim. *See Saldivar v. State,* 980 S.W.2d 475, 496 (Tex.App.-Houston [14th Dist.] 1998, pet. ref'd). Hearsay objections and objections to violations of the constitutional right to confront witnesses are neither synonymous nor necessarily coextensive. *Holland,* 802 S.W.2d at 700; *Thacker,* 999 S.W.2d at 61; *Tapia v. State,* 933 S.W.2d 631, 633 (Tex.App.-Dallas 1996, pet. ref'd). "Although the right of confrontation is vital to an ordered criminal justice system and of constitutional magnitude, it is none the less a trial right." *Mallory v. State,* 752 S.W.2d 566, 569 (Tex.Crim.App.1988).

Appellant acknowledges that his confrontational claim was not advanced at trial. Appellant relies exclusively upon *Crawford v. Washington,* —— U.S. ——, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). *Crawford* held that out-of-court statements by witnesses that are testimonial are barred under the Confrontation Clause of the Sixth Amendment to the United States Constitution unless the witnesses are shown to be unavailable and the defendant has had a prior opportunity to cross-examine the witnesses, regardless of whether such statements are deemed reliable by the trial court, abrogating the earlier decision in *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). *Crawford,* 124 S.Ct. at 1369–74.[12]

Thus, under *Crawford,* a Sixth Amendment Confrontation Clause analysis will usually turn on whether a particular statement is testimonial or not. The Court left for another day any effort to spell out a comprehensive definition of "testimonial" evidence. It did determine that the term

---

12. In *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the Supreme Court had held that the federal constitutional right of confrontation does not bar admission of an unavailable witness's statement against a criminal defendant if the statement bears "adequate indicia of reliability," a test met when the evidence either falls within a "firmly rooted hearsay exception" or bears "particularized guarantees of trustworthiness." 448 U.S. at 66, 100 S.Ct. 2531.

applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial, and to police interrogations. *Crawford,* 124 S.Ct. at 1374.

We find nothing in *Crawford* that would excuse appellant for failing to make a confrontation claim at trial. *Crawford* has substantially altered the law with respect to the Sixth Amendment's Confrontation Clause and the relationship of that clause to the rules of evidence. We reject, however, appellant's suggestion that no waiver resulted from his failure to object at trial because *Crawford* represents a new and novel federal constitution rule, and that it would have been futile to object on the basis of the Sixth Amendment's Confrontation Clause.

*Crawford* traced the right to confront one's accuser as a concept dating back to Roman times. *Id.* at 1359 (citing *Coy v. Iowa,* 487 U.S. 1012, 1015, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988)). The *Crawford* opinion recounted the development of the right of confrontation as a part of the English common law, its use in the Colonies and the inclusion of the right in the Sixth Amendment of the United States Constitution along with its common law exceptions. *Id.* at 1359–65.

*Crawford* pointed out that Supreme Court cases have been largely consistent with the principles underlying the Confrontation Clause and the understanding of the Framers of the Constitution. *Id.* 124 S.Ct. at 1367. The Court observed that while the results of "our decisions" have generally remained faithful to the original meaning of the Confrontation Clause, some of "our rationales" have not. *Id.* at 1369; *see also Roberts,* 448 U.S. at 66, 100 S.Ct. 2531.

For our purposes, *Crawford* makes clear that the federal constitutional right to confront one's accusers is neither new nor novel. It has not been previously dis-

placed in our criminal justice system. The right of confrontation does not fall into the category of rights "not previously recognized," *cf.* Dix, § 42.55, nor have we found United States Supreme Court cases eliminating the federal constitutional right as the basis of a proper trial objection.

In *Crawford,* the defendant preserved error by making a federal constitutional claim on the absence of confrontation. *Crawford,* 124 S.Ct. at 1358. Here, appellant made no such trial objection. Moreover, article I, section 10 of the Texas Constitution may afford a greater right of confrontation than does the Sixth Amendment. *See Gonzales v. State,* 818 S.W.2d 756, 762–63 (Tex.Crim.App.1991); *Saldivar,* 980 S.W.2d at 496; *Judd v. State,* 923 S.W.2d 135, 138–39 (Tex.App.-Fort Worth 1996, pet. ref'd). However, appellant did not voice a trial objection on state constitutional grounds nor has he raised one on appeal.

We overrule point of error ten. Appellant's reliance on *Crawford* is misplaced under the particular circumstances of the instant case.

### Another Extraneous Offense

 In points of error seven and eight, appellant asks whether it was error to admit evidence of "an extraneous offense" that was separate and occurred prior to the "alleged assault which was the basis of police involvement" in violation of Rule 404(b) of the Texas Rules of Evidence. In his brief, appellant merely refers us to the fact situation in point of error six concerning Tony Rogers's statements to Officer Rhoden. He does not specifically identify the extraneous offense of which he complains. There was no objection on the basis of Rule 404(b) or otherwise when any evidence of an extraneous offense was offered.

Appellant attempts to rely upon the general objection of "relevancy" made when Rhoden was asked what he learned from Rogers prior to any mention of an extraneous offense. Appellant cites *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex.Crim.App.1990) (op. on reh'g), for the proposition that a relevancy objection is sufficient to preserve error on a Rule 404(b) claim. *Montgomery* is distinguishable from the instant case. *Montgomery* referred to an objection at the very time the extraneous offense evidence was being offered. The *Montgomery* court stated:

> An objection that such evidence is not "relevant," or that it constitutes an "extraneous offense" or "extraneous misconduct," although not as precise as it could be, ought *ordinarily* to be sufficient under the circumstances to apprise the trial court of the nature of the complaint. *Zillender v. State*, 557 S.W.2d 515 (Tex.Crim.App.1977); Tex.R.App. P. Rule 52(a).

*Id.* at 387 (emphasis added).

■ *Montgomery* was obviously referring to that part of *Zillender*, 557 S.W.2d at 517, where an objection may be sufficiently specific if the grounds are apparent from the context, particularly when extraneous offense evidence is being offered at the time. *See* Tex.R.App. P. 33.1(a)(1)(A). When a general relevancy objection is properly overruled, it is not the trial court's duty to notice and *sua sponte* exclude all later trial evidence that is not relevant. The objecting party must reurge his objections. *Cf. Fuller v. State*, 829 S.W.2d 191, 198–99 (Tex.Crim.App. 1992).

■ The Texas Court of Criminal Appeals has now made it clear that a general relevancy objection at trial does not preserve error concerning inadmissible extraneous offenses. *Medina v. State*, 7 S.W.3d 633, 643 (Tex.Crim.App.1999) (citing *Ca-*

*macho v. State*, 864 S.W.2d 524, 533 (Tex. Crim.App.1993)). Under the circumstances presented, as in *Camacho*, appellant's earlier general objection of "relevancy" did not preserve error as to the later admission of any extraneous offense evidence without further objection. The seventh and eighth points of error are overruled.

### Deadly Weapon

■ In the ninth point of error, appellant questions the factual sufficiency of the evidence to support the jury's "finding that appellant used or exhibited a deadly weapon during the course of the offense [evading arrest]." The challenge is limited to the issue presented.

A review of the factual sufficiency of the evidence begins with the presumption that the evidence is legally sufficient to support the finding of the jury. *Clewis v. State*, 922 S.W.2d 126, 134 (Tex.Crim.App.1996). In a challenge to the factual sufficiency of the evidence, we view the evidence without the prism of "in the light most favorable to the prosecution" as in a legal sufficiency challenge. *Id.* at 129. A reviewing court must consider all the evidence impartially comparing evidence that tends to prove the existence of a disputed fact or facts with evidence that tends to disprove that fact or those facts. *See Santellan v. State*, 939 S.W.2d 155, 164 (Tex.Crim.App.1997). We reverse for factual insufficiency only where the proof supporting the finding, standing alone, is too weak to sustain the finding, or the proof, although adequate if taken alone, is greatly outweighed by contrary proof. *See Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim.App.2000); *see also Sells v. State*, 121 S.W.3d 748, 754 (Tex.Crim.App.2003). A factual sufficiency review must be appropriately deferential so as to avoid a reviewing court substituting its own judgment for that of the fact

finder. *Wesbrook v. State*, 29 S.W.3d 103, 112 (Tex.Crim.App.2000); *Jones v. State*, 944 S.W.2d 642, 647 (Tex.Crim.App.1996); *see also Sells*, 121 S.W.3d at 754. A decision is not manifestly unjust merely because the jury resolved conflicting views of the evidence in favor of the State. *See Cain v. State*, 958 S.W.2d 404, 410 (Tex. Crim.App.1997).

Section 1.07(a)(17)(A), (B) defines "deadly weapon" as meaning:

(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or (B) anything in the manner of its use or intended use is capable of causing death or serious bodily injury.

Tex. Pen.Code Ann. § 1.07(a)(17)(A), (B) (West 2003).

In the instant case, the indictment alleged that a motor vehicle was used as deadly weapon "while in flight." In *Cates v. State*, 102 S.W.3d 735 (Tex.Crim.App. 2003), the court stated:

The evidence must demonstrate that the deadly weapon was used or exhibited "during the transaction from which" the felony conviction is obtained. To sustain a deadly weapon finding, there must be evidence that others were actually endangered, not "merely a hypothetical potential for danger if others had been present." An automobile can be a deadly weapon if it is driven so as to endanger lives.

*Id.* at 738; *see also Mann v. State*, 58 S.W.3d 132 (Tex.Crim.App.2001) (adopting as its own *Mann v. State*, 13 S.W.3d 89, 91–92 (Tex.App.-Austin 2000)).

In the instant case, Officers Guevara and Flippin gave immediate chase as appellant drove away in a Cadillac from the scene where he had been stopped. Appellant was seen running a red light at the intersection of Springdale and 51st Streets. A video tape showed that at least four oncoming motor vehicles swerved or pulled to the right to avoid the Cadillac.[13] There was police testimony that their patrol vehicles were traveling one hundred miles per hour during the chase. This was not, of course, direct evidence of the speed of the Cadillac at the time. It was, however, some circumstantial evidence that appellant in the Cadillac was traveling at a high rate of speed on public streets. The police were unable to catch appellant and terminated the chase. Appellant claimed that Emilio Rodriguez was driving the Cadillac at the time. Appellant revealed that about 4:30 o'clock the next morning Rodriguez called him and reported the chase. When appellant met with Rodriguez shortly thereafter, Rodriguez stated that the Cadillac jumped the curb, went into the bushes, and came back onto the street; and that was what "messed up" the Cadillac. The jury rejected appellant's version that Rodriguez was the driver of the Cadillac.

There was evidence that others on the public streets were actually endangered by appellant's use of the Cadillac in evading arrest. While some of the other evidence might show a mere potential for danger if others were present, we reject appellant's factual sufficiency claim. The jury's affirmative finding of the use of a deadly weapon as alleged was not manifestly unjust or clearly wrong. The ninth point of error is overruled.

The judgment is affirmed.

---

**13.** In his jury argument, appellant's counsel stated that he counted eleven cars on the tape, that some oncoming vehicles pulled to the right, and others did not. Counsel acknowledges that the evidence showed the Cadillac was speeding at the time.