COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-07-281-CR

 

 

SAJIR ALVAREZ                                                                  APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM CRIMINAL
DISTRICT COURT NO. 3 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I.      Introduction

A jury convicted Appellant Sajir Alvarez of
sexual assault and assessed a two-year sentence.  In his sole point, Appellant argues that the
trial court abused its discretion when it permitted hearsay testimony from
Detective Schloeman concerning a document not in evidence.  We affirm.








II.     Factual
and Procedural Background

L.V. testified that she met Appellant when she
was seventeen in the fall of 2004 at Tarrant County College (ATCC@),
through their mutual friend Avalos.  On
October 16, 2004, Appellant and L.V. went on their first date.  L.V. testified that Appellant bought
alcoholic beverages for them and then parked at a soccer field at TCC.  L.V. testified that they talked and kissed,
and that Appellant tried to get on top of her in the car.  L.V. stated that she told him she Adidn=t know
him like that@ and she was not okay with
that.  According to her, Appellant then
moved back to his side of the car.  At
11:00 p.m., Appellant and L.V. went to a small party at Appellant=s friend
Garza=s house
in north Fort Worth.  L.V. testified that
she drank more at that residence.

Garza testified that he noticed Appellant and
L.V. were still at the house when he ended the party at 3:00 in the
morning.  He stated that he saw L.V.
being placed by someone in Appellant=s white
car, and that she appeared passed out.








L.V. testified that she remembered blacking out
at the party while sitting in a chair by the car and waking up at TCC, lying in
the soccer field.  L.V. stated that after
she awoke, she was unable to place a phone call because she still felt out of
it.  She stated that she passed out again
and woke up when Appellant was putting her in his car at the soccer field.  Appellant drove her to meet Avalos at a convenience
store near TCC.

Avalos met the two at the convenience store after
receiving two calls from Appellant who first claimed he was searching for
L.V.  Avalos found L.V. passed out in the
front seat.  Avalos took L.V. to L.V=s sister=s
house.  L.V.=s
parents then took L.V. to the hospital.

At trial, L.V. described her condition when she
was picked up by Avalos: she had bruises and scratches on her torso, her
clothes were inside out, and she had a Abig knot
on [her] head.@ 
She testified that those bruises were not there before she went out with
Appellant that night.  Avalos testified
about L.V.=s appearance when she met
Appellant and L.V. at the convenience store early that morning.  Avalos noticed L.V.=s grassy
and dirty clothing and Ared and purple marks@ all
over L.V.=s chest.  Avalos stated that L.V. had a blank stare on
her face and did not appear to know where she was.  L.V. did not remember what had happened.  Avalos confirmed that after they went to L.V.=s sister=s house,
the sister called L.V.=s parents, who took her to the
hospital.  Avalos further testified that
Appellant did not offer to go with L.V. to her sister=s house
and never contacted Avalos to find out how L.V. was doing.








Nurse McGuire testified that L.V. arrived at the
hospital at 9:04 a.m. after the alleged assault.  She stated that she collected DNA swabs from
L.V. at the hospital using a sexual assault exam kit and noted that there were
signs of trauma almost head-to-toe on L.V.=s body
and trauma to her genital area.  She
testified there were thirty-three wounds, including abrasions, bruising or Ahickeys@ on L.V.=s chest,
a laceration on her mouth, broken fingernails on L.V.=s
fingers, and various bruises caused by rubbing over a rough surface; several of
the injuries were consistent with an assault. 
The jury received photographs that showed bruises located on her chest
and back.  Nurse McGuire further stated
that L.V. had redness and abrasions on the hymenal membrane and entrance of the
vagina, and redness on the anal opening. 
She confirmed the redness was consistent with trauma to the vaginal area
and hymenal ring.  She stated that the
wound to the anal opening supported the history of sexual assault.  Testing of the DNA swabs collected by Nurse
McGuire revealed Appellant was a major DNA contributor of the DNA.[2]








Detective Schloeman testified that during her
investigation, Appellant gave a statement. 
She testified that Appellant had told her that he and L.V. had
consensual sex that night, before going to the party at Garza=s
house.  He told her that L.V. left the
party with someone else.  He also told
her that he later received an anonymous phone call telling him where to find
L.V. afterwardsCa soccer field at TCC.

The jury returned a verdict of guilty and
sentenced Appellant to two years=
imprisonment.

III.     Appellant=s Sole
Point

Appellant argues that the trial court abused its
discretion by allowing the State to elicit Detective Schloeman=s
hearsay testimony relating to a DNA results report that she had not personally
prepared.

a.      Standard
of review

A trial court=s ruling
on the admissibility of evidence is reviewed under an abuse of discretion
standard.  Walters v. State, 247
S.W.3d 204, 217 (Tex. Crim. App. 2007). 
If the trial court=s ruling is within the zone of
reasonable disagreement, there is no abuse of discretion.  Id. 
Further, a trial court=s
decision regarding admissibility of evidence will be sustained if correct on
any theory of law applicable to the case, even when the court=s
underlying reason for the decision is wrong. 
Romero v. State, 800 S.W.2d 539, 543B44 (Tex.
Crim. App. 1990) (citing Spann v. State, 448 S.W.2d 128 (Tex. Crim. App.
1969)).








b.     Applicable
law

Hearsay statements are generally not admissible
unless the statement falls within a recognized exception to the hearsay
rule.  Walters, 247 S.W.3d at
217.  Rule 107 of the Texas Rules of
Evidence is an exception to that rule.  Id.  Rule 107 or the ARule of
Optional Completeness@ provides that,

[w]hen part of an act, declaration, conversation,
writing, or recorded statement is given in evidence by one party, the whole on
the same subject may be inquired into by the other, and any other act,
declaration, writing or recorded statement which is necessary to make it fully
understood or to explain the same may also be given in evidence, as when a
letter is read, all letters on the same subject between the same parties may be
given.








Tex. R. Evid. 107.  This rule
permits the introduction of otherwise inadmissible evidence when that evidence
is necessary to fully and fairly explain a matter Aopened
up@ by the
adverse party.  Walters, 247
S.W.3d at 218; Credille v. State, 925 S.W.2d 112, 116 (Tex. App.CHouston
[14th Dist.] 1996, pet. ref=d); see
also Callaway v. State, 818 S.W.2d 816, 827 (Tex. App.CAmarillo
1991, pet. ref=d) (stating A[o]nce a
matter is injected into the proceeding, evidence to fully explain the matter is
relevant and admissible@).  The purpose of rule 107 is to reduce the
possibility of confusion, distortion, or false impressions arising from the
introduction of part of a writing, tape, or conversation out of context.  Credille, 925 S.W.2d at 116.  It is not error for a trial court to admit
hearsay evidence in a criminal case over objection when it goes to clarify
other hearsay evidence elicited by the opposition.  See Bunton v. State, 136 S.W.3d 355,
367 (Tex. App.CAustin 2004, pet. ref=d)
(discussing the propriety of the defense eliciting hearsay from the
investigating police officer and the State later seeking to clarify the hearsay
evidence).  Rule 107 is not invoked by
mere reference to a document, statement, or act.  Id. 
The evidence introduced must be on the same subject; the rule does not
permit the introduction of other similar but inadmissible evidence unless it is
necessary to explain properly admitted evidence.  Walters, 247 S.W.3d at 218; Sauceda
v. State, 129 S.W.3d 116, 123 (Tex. Crim. App. 2003).  Rule 107 is further limited by rule 403,
which permits a trial judge to exclude otherwise relevant evidence if its
unfair prejudicial effect or its likelihood of confusion of the issues
substantially outweighs its  probative
value.  Walters, 247 S.W.3d at
218. 

c.      DNA
testimony








A DNA analyst, Uvonna Alexander, testified that
Appellant=s DNA was found on L.V.=s breasts,
neck, vaginal, vulvar, anal, and perianal swabs.  On cross-examination, Alexander stated that
when she examined the swab taken from L.V.=s left
breast she found DNA from a minor contributor of unknown origin along with DNA
from Appellant and L.V.  She confirmed
that this meant that the sample from the swab contained a mixture of DNA
originating from Aat least three individuals.@  Alexander clarified that Appellant and L.V.
were two of the contributors in that mixture. 
Alexander also stated on cross-examination that although Appellant was
found to be a contributor in the results of the vaginal swab, further testing
would be necessary to determine if there was another contributor in that
region.

During his cross-examination of Detective
Schloeman, Appellant questioned her about the DNA results.  Appellant asked: AWere you
aware that the DNA results actually showed a third contributor on both the
chest and vulvar swabs?@[3]  The State objected to the question, stating
that it was Aan inaccurate statement.@  Schloeman answered that she was aware of this
fact, and the court overruled the State=s
objection.

On redirect, the State asked Schloeman to review
the results: 

Q.  And in the conclusion section of the DNA lab,
does it ever refer, to your knowledge and your recollection, to any third
contributor being found in the vulvar swabs?

 

[Appellant=s counsel]:  Your Honor, I object.  She is testifying from a document that is
hearsay.

 

The Court:  Overruled.

 








A.  No ma=am.

 

Q.  And is the only mention of a third
contributor with regards to the right upper chest wall?  

 

A.  That=s right.

 

Q.  And with regards to the vulvar swabs, was the
only contributor being the Defendant?

 

A.  That=s right.

d.     Analysis

On cross-examination, Appellant=s
counsel had asked Detective Schloeman if she reviewed the document containing
the DNA results and then proceeded to ask questions based on the DNA
results.  In this line of questioning,
Appellant=s counsel was requesting that
Schloeman recall facts from a document that she had not written.  Schloeman incorrectly stated that there was a
third contributor on the vulvar swab, which left the jury with a false impression
about the results.  The trial court  allowed the witness to clarify the results
found in the document to clear up the incorrect impression left by Appellant=s
cross-examination.








Under rule 107, we hold that Appellant=s
counsel=s
cross-examination Aopened the door@ when he
inquired about the DNA results.  The
trial court thus properly overruled Appellant=s
hearsay objection and allowed the State to question Schloeman on re-direct
about the actual DNA results of the vulvar swabs, which she had misstated
during Appellant=s cross-examination.  See Martinez v. State, 749 S.W.2d 556,
559 (Tex. App.CSan Antonio 1988, no pet.)
(holding it is not error to admit hearsay evidence when it serves to clarify
other hearsay evidence elicited by the opposition).  The State was able to narrowly clarify that,
regarding the vulvar swabs, the sole contributor was Appellant, and it
clarified the statement that the unknown third contributor related to the chest
swabs only.[4]  Because Appellant opened the door to
Schloeman=s testimony regarding the DNA
results, the trial court did not abuse its discretion by overruling Appellant=s
hearsay objection.

VI.    Harm analysis








Even if the trial court abused its discretion by
allowing this evidence, any error must be disregarded as admission of hearsay
is nonconstitutional error and this admission did not affect Appellant=s
substantial rights.  Tex. R. App. P.
44.2(b); see Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App.
1998).  With nonconstitutional errors, we
are to disregard errors, defects, irregularities, or variances that do not
affect the substantial rights of the accused. 
Tex. R. App. 44.2(b).  A
substantial right is affected when the error had a substantial or injurious
effect or influence on the jury=s
verdict.  Johnson v. State, 43
S.W.3d 1, 3B4 (Tex. Crim. App. 2001).  If, on the record as a whole, it appears the
error Adid not
influence the jury, or had but a slight effect,@ we must
consider the error harmless and allow the conviction to stand.  Johnson, 967 S.W.2d at 417.  The improper admission of evidence does not
constitute reversible error if the same facts are proved by other properly
admitted evidence.  See Brooks v.
State, 990 S.W.2d 278, 287 (Tex. Crim. App.), cert. denied, 528 U.S.
956, 120 S. Ct. 384 (1999).








The DNA analyst Alexander had previously
testified without objection about the test results on the swabs contained in
L.V.=s sexual
assault kit.  Specifically, she testified
that Appellant=s DNA was found on the chest,
vaginal, vulvar, perianal, and anal swabs. 
She testified that the sperm fraction[5]
on the vulvar swabs originated from Appellant. 
After the testimony of Schloeman on redirect to which Appellant
objected, the State again called Alexander as a rebuttal witness and asked her
whether she found a third contributor on the vulvar swab.  Alexander replied, without objection that
there was no third contributor on that particular swab.  The testimony of Schloeman to which Appellant
objected was merely cumulative of the DNA analyst=s
testimony about the results, properly admitted before and after Schloeman=s
testimony.  See Brooks, 990 S.W.2d
at 287; Leday v. State, 983 S.W.2d 713, 718 (Tex. Crim. App.
1998); Matz v. State, 21 S.W.3d 911, 912 (Tex. App.CFort
Worth 2000, pet. ref=d) (op. on remand).  Considering all of the evidence admitted, we
conclude that Schloeman=s admitted testimony was
harmless and did not affect a substantial right.

V.     Conclusion

Based on the State=s
correction of a false impression and the lack of any cognizable error, we
overrule Appellant=s sole point and affirm the
trial court=s judgment.

 

PER
CURIAM

 

 

PANEL: GARDNER,
LIVINGSTON, and DAUPHINOT, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  April 30, 2009











[1]See Tex. R. App. P. 47.4.





[2]We will further discuss
testimony about the DNA results in our analysis of Appellant=s complaint below.





[3]Appellant appeared to be
directing his inquiry with Schloeman towards Alexander=s testimony concerning
the vaginal swab, where she stated that further testing was needed to
determine another contributor.  Appellant
mistakenly asserted the unknown-contributor evidence was from the Avulvar swab@ while questioning
Schloeman, a misstatement that started the line of questioning from both sides
and the subsequent hearsay allegation.





[4]Moreover, the State
stayed within the subject of the vulvar swab results and the lack of a third
contributor when it elicited testimony from Schloeman.  Cf. Bunton, 136 S.W.3d at 367 (stating
difficulty ensued when the State elicited new hearsay from the officer
unrelated to the hearsay that it was entitled to clarify).





[5]Alexander explained that
when she suspects semen or sperm present in a sample also containing biological
fluids she performs an extraction, which isolates the sample by separating the
male fraction and female fraction of the specimen.  She refers to the female fraction as the Aepithelial fraction@ and the male fraction as
the Asperm fraction.@  She later explained that with the vulvar
swab, the epithelial fraction was consistent with a mixture of L.V. and
Appellant=s DNA.  The DNA profile found in the sperm fraction
was consistent with Appellant=s DNA.