Opinion to: SJR TGT SN TJ EVK ERA GCH LCH JB









Opinion Issued November 17,
2005














 

     

 

 

 

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-04-00795-CR

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



JUAN RIOS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

 



On Appeal from the 182nd District Court

Harris County, Texas 

Trial Court Cause No. 948133

 

 



O P I N I O N

 

          Appellant Juan Rios pleaded not
guilty to the charge of aggravated robbery. A jury found Rios guilty and
assessed punishment at thirty years’ imprisonment and a $3,000 fine.  On appeal, Rios contends, with respect to the
guilt/innocence phase of the trial, that (1) the evidence is legally and
factually insufficient to sustain his conviction; (2) the trial court erred in
admitting fingerprint testimony where the State failed to give adequate notice;
(3) the trial court erred in admitting testimonial hearsay; and (4) the trial
court erred in admitting accomplice testimony without sufficient
corroboration.  Concerning the punishment
phase of the trial, Rios contends that the trial court erred in (1) admitting
evidence of an unreliable pretrial identification; (2) failing to require an
affirmative finding of guilt beyond a reasonable doubt on unadjudicated
extraneous offenses at punishment; and (3) submitting an ambiguous parole
instruction to the jury.  We affirm.

I.  FACTS

          In
April 2003, Marcia Escobar and Karla Mejia picked up their aunt, Carmen
Escobar, from work.  A car followed them into
Carmen’s apartment complex.  When the
women stopped near Carmen’s unit, the car behind them stopped as well, and
three men wearing masks and bearing guns exited the car and approached the
women’s vehicle.  The men began hitting
the windows of the vehicle with their hands, telling the women to open the doors,
and one of the men used a machete to break out the rear window.  When the women unlocked the doors, one of the
men entered the car and pointed his gun at Karla while another man put his gun
in Carmen’s mouth and demanded her jewelry. 
When Carmen struggled, the man broke one of her teeth with the gun and
yanked her earrings out of her ears.  The
women’s screams appeared to make the assailants nervous, so after a few minutes,
the men returned to their car and left, taking with them the earrings, a cell
phone, and the keys to the women’s vehicle.

          The
first officer to arrive on the scene did not speak Spanish, and the victims did
not speak English, so the officer called a wrecker driver in the area whom he
knew to be fluent in both languages.  With
the help of the wrecker driver, the officer obtained statements from the
victims.  After the victims told the
officer where their assailants struck their car windows, police recovered
fingerprints. Police later matched the fingerprints to Rios, Jose Matutes, and
Henry Martinez.  The victims identified
Matutes and Martinez in a photo array, but none of them could identify Rios. 

          At
trial, Matutes testified to Rios’s involvement in the robbery.  The victims testified to the details of the
robbery.  Over Rios’s hearsay objection,
the first officer to arrive on the scene testified to the contents of the statements
made to him by the complaining witnesses, as translated by the interpreter.  Also over Rios’s objection, a fingerprint
expert testified that the fingerprints found on the victims’ car matched the fingerprints
of Rios, Matutes, and Martinez found in the Automated Fingerprint Identification
System (“AFIS”), and matched the fingerprints taken from Rios during the course
of the trial.  Another officer testified
that he later pulled Rios over with his two co-defendants in a vehicle
containing a revolver and two ski masks. 
The jury found Rios guilty of aggravated robbery.

          During
the punishment phase of the trial, the State presented evidence that Rios
previously had been identified from a photo array as the perpetrator of a
similar robbery a few months earlier.  The
trial court denied Rios’s motion to suppress the testimony, finding that it was
the not the result of an overly suggestive photo array. 

II.  GUILT/INNOCENCE PHASE OF TRIAL

A.  Admission of Fingerprint Expert Testimony

          In
his first issue, Rios contends the trial court erred in allowing expert
testimony comparing Rios’s fingerprints to those recovered from the crime scene
because the State failed to give adequate notice of the content of such
testimony.  During a trial recess, an
expert fingerprinted Rios, and immediately after the recess Rios’s counsel
objected “Judge, before they come in, just for the record, my client, Juan
Rios, was just fingerprinted by Deputy Davis, which again I reurge my objection
as to him having done that to him.”  Though
this objection appears to renew an earlier objection, Rios does not point us to
the initial objection in his brief, and we are unable to find any earlier
objection in the record.  Defense counsel
did not object to the admission of Exhibit 39, the latent fingerprint card that
linked Rios to the scene.  The trial
court overruled counsel’s objection, and the expert testified, without further
objection, that the fingerprints he had just taken from Rios matched those
found on the victims’ car. 

On appeal, Rios argues not that his
fingerprints were improperly taken or admitted, but rather that he was not
given adequate notice that the expert would testify that Rios’s fingerprints taken
during the trial recess matched fingerprints taken from the crime scene.  The State contends that the objection made at
trial differs from the argument made on appeal, and, thus, that any error in
the admission of the testimony is waived. 
We agree.

          To
preserve a complaint for appellate review, a defendant must make a timely,
specific objection to the trial court.  Tex. R. App. P. 33.1(a); see Wilson v. State, 71 S.W.3d 346,
349 (Tex. Crim. App. 2002).  It follows
that an objection stating one legal basis may not be used to support a different
legal theory on appeal.  See Heidelberg
v. State, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004). Courts
have routinely held that where a complaint on appeal does not comport with an
objection made at trial, the error is not preserved on the complaint.  Wilson, 71 S.W.3d at 349; Goff v.
State, 931 S.W.2d 537, 551 (Tex. Crim. App. 1996); Flores v. State,
125 S.W.3d 744, 747 (Tex. App.—Houston [1st Dist.] 2003, no pet.).  An objection is sufficient to preserve
error for appellate review if the objection communicates to the trial judge
what the objecting party wants and why the objecting party thinks himself entitled
to relief.  Lankston v. State, 827
S.W.2d 907, 909 (Tex. Crim. App. 1992).  To
preserve error where objectionable testimony is involved, a party must object
every time the allegedly inadmissible testimony is offered.  Johnson v. State, 84 S.W.3d 726, 729
(Tex. App.—Houston [1st Dist.] 2002, pet. ref’d) (citing Ethington v. State,
819 S.W.2d 854, 858 (Tex. Crim. App. 1991)).  


          Rios
failed to object when Deputy Davis, the fingerprint expert, took the stand, he
failed to object to any of the State’s questions, and he failed to object when
Davis stated that Rios’s fingerprints matched those found at the scene.  The only objection at trial, that the
fingerprints taken during the trial should not be admitted, is completely
different from the argument on appeal, that the State did not provide adequate
notice of Davis’s testimony.[1]  Rios’s objection to Davis fingerprinting him
was not sufficient to preserve error as to any lack of specific notice that
Davis would testify as an expert witness about them.  Rios did not object on the ground of
insufficient notice at trial, so we cannot consider the merit of such an
argument here.  Accordingly, Rios waives
any error.

B.  Admission of “Testimonial Hearsay”

          In
his second issue, Rios contends his Sixth Amendment right to confrontation was
violated because he was unable to cross-examine the wrecker driver who served
as an interpreter at the scene regarding his translation of the complaining witnesses’
statements.  Rios contends that the
translation constitutes testimonial hearsay and thus the trial court erred in allowing
the responding officer to testify about the complaining witnesses’ statements
at the scene, as he heard them through the absent interpreter.

When Deputy Klosterman, the
responding police officer, arrived on the scene, he called a wrecker driver
whom he knew to be fluent in Spanish to translate the witnesses’ descriptions
of the events.  Klosterman testified
directly about the witnesses’ statements at the scene.  Rios objected to Klosterman’s testimony twice
on hearsay grounds, and the trial court overruled the objection both times based
on the excited utterance exception.  See
Tex. R. Evid. 803(2) (defining
excited utterance exception).  Klosterman did not identify the interpreter in
his offense report, but he did testify at trial that his name is Alex
Chappa.  During cross-examination, Rios
questioned Klosterman concerning his reliance on Chappa’s interpretation of the
witnesses’ statements, but he never objected on Confrontation Clause grounds,
nor did he attempt to call Chappa to the stand to question him.  Furthermore, Rios had the opportunity at
trial to cross-examine each of the witnesses whose statements Chappa translated
because those witnesses testified at trial.

On appeal, Rios contends that the
State’s failure to disclose Chappa’s identity prior to trial, or to call Chappa
to the stand during trial, violates Crawford v. Washington, because
Chappa’s statements “were made under circumstances which would lead an
objective witness reasonably to believe that the statement[s] would be
available for use at a later trial.”  541
U.S. 36, 52, 124 S. Ct. 1354, 1364 (2004). 
The State responds that the hearsay objection made at trial is
insufficient to preserve error on the confrontation issue, and we agree.

Generally, a timely, specific
objection is required to preserve even constitutional error for appeal.  Tex.
R. App. P. 33.1; see Wilson,
71 S.W.3d at 349.  Before Crawford,
it was well settled that a hearsay objection at trial would not preserve a
Confrontation Clause argument for appeal. 
See Holland v. State, 802 S.W.2d 696, 700 (Tex. Crim. App. 1991);
 Thacker v. State, 999 S.W.2d 56,
61 (Tex. App.—Houston [14th Dist.] 1999, pet. ref’d); Saldivar v. State,
980 S.W.2d 475, 496 (Tex. App.—Houston [14th Dist.] 1998, pet. ref’d).  We conclude that after Crawford, the
requirements for preserving error in cases involving testimonial hearsay should
remain the same, as Crawford did not address preservation of
constitutional error.[2]  See Reyna v. State, 168 S.W.3d 173,
179 (Tex. Crim. App. 2005) (holding raising hearsay issue does not preserve
error on Confrontation Clause issue); Bunton v. State, 136 S.W.3d 355,
369 (Tex. App.—Austin 2004, pet. ref’d) (holding there is “nothing in Crawford
that would excuse appellant for failing to make a confrontation claim at
trial”); Oveal v. State, 164 S.W.3d 735, 739 n.2 (Tex. App.—Houston [14th
Dist.] 2005, no pet.) (approving of Bunton); Crawford v. State,
139 S.W.3d 462, 464 (Tex. App.—Dallas 2004, pet. ref’d) (same).  Accordingly, Rios’s failure to object on
confrontation grounds at trial waives this argument on appeal.

C.  Corroboration of Accomplice Testimony

          In his third issue, Rios contends the
testimony linking his fingerprints to those found on the victims’ vehicle is
insufficient to corroborate the testimony of his accomplice, Jose Matutes, as required
by Tex. Code Crim. Proc. Ann.
art. 38.14 (Vernon 2005).  Rios contends
that without testimony from the three victims identifying him as one of the
assailants, Matutes’s statements are insufficient to uphold his
conviction.  

          The
Texas Code of Criminal Procedure requires that accomplice testimony be
“corroborated by other evidence tending to connect the defendant with the
offense committed.”  Id.;
Collela v. State, 915 S.W.2d 834, 838 (Tex. Crim. App. 1995).   In weighing the sufficiency of corroborative
evidence, we eliminate from consideration the testimony of the accomplice
witness, and review the remaining evidence to determine if there is some
evidence connecting the defendant with the offense.  St. Julian v. State, 132 S.W.3d 512,
516 (Tex. App.—Houston [1st Dist.] 2004, pet. ref’d) (citing Hernandez v.
State, 939 S.W.2d 173, 176 (Tex. Crim. App. 1997)).  The non-accomplice evidence need not establish
guilt beyond a reasonable doubt, or even directly link the defendant to the
commission of the offense; the evidence need only tend to connect the defendant
to the offense.  Id.  Though the accused’s mere presence at the
scene of the crime is insufficient to corroborate accomplice witness testimony,
“evidence of such presence, coupled with other suspicious circumstances, may
tend to connect the accused to the offense.” 
Dowthitt v. State, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996).

          Contrary
to Rios’s contention, the State offered a number of corroborative elements that
satisfy the requirements of Article 38.14 of the Texas Code of Criminal
Procedure.  Deputy Davis testified that
fingerprints taken from Rios matched latent fingerprints found on the window of
the victims’ car on the night of the offense. 
Detective Keen testified, before Davis ever took Rios’s fingerprints, that
fingerprints from the victims’ car matched those of Rios, according to a
reverse search in AFIS.  Furthermore, all
three victims testified that the assailants used their hands to hit the window
of the car, and at least one of the victims told police where the window had
been hit so they could retrieve the fingerprints.  The victims also testified that the
assailants wore ski masks and carried guns, and the State offered evidence that
less than a month after the incident, police apprehended Rios with his two
co-defendants in a vehicle containing a revolver and two ski masks.  This evidence creates circumstances tending
to connect Rios to the commission of the offense.  Accordingly, we hold that the evidence
sufficiently corroborates the accomplice witness testimony.

D.  Legal Sufficiency

          Rios
contends the evidence is legally insufficient to support his conviction because
none of the witnesses positively identified him, and the testimony of his
co-actor was not adequately corroborated.[3]

In determining the legal sufficiency
of the evidence, we review the evidence in a light most favorable to the
verdict to determine whether any rational fact finder could have found the
essential elements of the criminal offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319,
99 S. Ct. 2781, 2789 (1979); Escamilla v. State, 143 S.W.3d 814, 817
(Tex. Crim. App. 2004).  Although our
analysis considers all evidence presented at trial, we may not re-weigh the
evidence or substitute our judgment for that of the fact finder.  King v. State, 29 S.W.3d 556, 562
(Tex. Crim. App. 2000).  Here, Rios was
charged both as a principal and as a party to aggravated robbery, so the State
had the burden to prove either that Rios (1) in the course of committing a
theft intentionally or knowingly threatened or placed another in fear of imminent
bodily injury or death and used or exhibited a deadly weapon, or (2) acted with
intent to assist in the commission of the offense while encouraging, aiding, or
attempting to aid others in committing the offense.  Tex.
Pen. Code Ann. §§ 7.02(a)(2),
29.03 (Vernon 2003). 

The State presented the testimony of
accomplice Jose Matutes that Rios fully participated in the robbery and used a
gun to threaten the victims.  The State presented
evidence that fingerprints found on the window of the complaining witnesses’
car matched Rios’s fingerprints.  The
complainants testified that all three of their assailants wore ski masks, and
frightened them by hitting the windows of their car with their hands and
brandishing guns.  A police officer
testified that he pulled over Rios and his co-defendants less than a month
after the incident in a vehicle containing a revolver and two ski masks.  The complainants also testified that their
assailants took a pair of earrings, a cell phone, and the keys to the women’s
vehicle.  When shown a photo array, one
of the complainants was able to identify Rios’s accomplice Matutes, and another
complainant was able to identify Rios’s other accomplice Martinez.  Viewed in a light most favorable to the
prosecution, we hold that the evidence is sufficient to permit a rational jury
to find Rios guilty beyond a reasonable doubt.

E.  Factual Sufficiency

          Rios contends the evidence is
factually insufficient to support his conviction because the “highly
suspicious” testimony linking fingerprints found on the victims’ car to
fingerprints taken from Rios during trial resulted in a manifestly unjust
verdict.

In a factual sufficiency review, we
view all the evidence in a neutral light, and we will set aside the verdict “only
if the evidence is so weak that the verdict is clearly wrong and manifestly
unjust, or the contrary evidence is so strong that the standard of proof beyond
a reasonable doubt could not have been met.” 
Escamilla, 143 S.W.3d at 817 (citing Zuniga v. State,
144 S.W.3d 477, 483 (Tex. Crim. App. 2004)). 
Although our analysis considers all the evidence presented at trial, the
trier of fact is the exclusive judge of the facts, the credibility of the
witnesses, and the weight to be given to their testimony.  Sharp v. State, 707 S.W.2d 611, 614
(Tex. Crim. App. 1986).  We may not
substitute our own judgment for that of the fact finder.  Johnson v. State, 23 S.W.3d 1, 12 (Tex.
Crim. App. 2000).  “[A] proper factual
sufficiency review must include a discussion of the most important and relevant
evidence that supports the appellant’s complaint on appeal.”  Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).

Rios contends the verdict is
manifestly unjust because the State obtained fingerprint evidence during the trial.  Thirty minutes before his testimony to the
jury, a fingerprint expert took Rios’s fingerprints, and compared them to the
fingerprints recovered from the scene. 
That expert then testified that Rios’s fingerprints matched those
recovered from the complainants’ car.  Prior
to this, however, another expert had testified that fingerprints found on the
car matched Rios’s fingerprints on file in the AFIS.  One of the victims told police where her
assailants hit the car with their hands, and that is where the police recovered
the fingerprints belonging to Rios.  In
addition, an accomplice testified that Rios fully participated in the
robbery.  Viewed in a neutral light, we
hold that the jury’s verdict is not manifestly unjust or contrary to the great weight
of the evidence.

III.  PUNISHMENT PHASE OF TRIAL

A. 
Admission of Photo Identification Testimony

          In
his fourth issue, Rios contends the trial court erred in admitting evidence of
a witness’s pretrial identification of Rios from a photo array, which he claims
was obtained under impermissibly suggestive circumstances and is therefore
unreliable.  

At the punishment phase of Rios’s
trial, Juana Estrada testified that she was the victim of a robbery similar to
the one in this case.  After a
fingerprint recovered from Estrada’s car was matched to Rios, a photo array was
compiled including his photograph, along with photos of men with similar
physical features.  Estrada testified
that two officers brought the array to her work and told her she had to identify
one of the men in the photos as her assailant. 
Both officers testified, however, that they told her she did not have to
pick any of the photos.  Despite having
told police that she never saw her assailant’s face, when Estrada saw Rios’s
picture in the photo array, she indicated that it made her nervous, and
identified him as her assailant.  The
trial court denied Rios’s motion to suppress the photo array identification,
but the court granted his motion to suppress any in-court identification
by Estrada. 

          On
appeal, Rios relies on Neil v. Biggers, 409 U.S. 188, 93 S. Ct. 375
(1972), contending that Estrada initially claimed never to have seen her
assailant, and thus her identification of him in the photo array is per se unreliable.  When challenging the admissibility of
pretrial identifications, a defendant has the burden to show, by clear and
convincing evidence based on the totality of the circumstances, that the
pretrial identification procedure was impermissibly suggestive, and that it
created a substantial likelihood of irreparable misidentification.  Barley v. State, 906 S.W.2d 27, 33–34
(Tex. Crim. App. 1995) (citing Simmons v. United States, 390 U.S.
377, 88 S. Ct. 967 (1968)).  It is only
after the court has determined that the procedures were impermissibly
suggestive that it need consider the factors enumerated in Biggers to
determine whether the reliability of the identification was affected.  Id. at 34; see also Burkett
v. State, 127 S.W.3d 83, 86–87 (Tex. App.—Houston [1st Dist.] 2003, no pet.).  Thus, we must first determine whether the
photo array was so suggestive as to make Estrada’s photo array identification
of Rios inadmissible.

In reviewing the trial court’s ruling
on the admissibility of the array, we defer to the trial court’s rulings on
mixed questions of law and fact if they turn on the credibility of
witnesses.  Loserth v. State, 963
S.W.2d 770, 772 (Tex. Crim. App. 1998).  “[A]
question ‘turns’ on an evaluation of credibility and demeanor when the
testimony of one or more witnesses, if believed, is always enough to add up to
what is needed to decide the substantive issue.”  Id. at 773.  Here, whether to admit the photo array is a
mixed question of law and fact turning on a credibility evaluation.  At the hearing on the motion to suppress, Rios’s
only argument for the suggestiveness of the array was that the officers brought
the array to Estrada’s work and told her she had to select one of the men in
the photographs as her assailant, thus making Estrada feel “some pressure.”  If the trial court believed the police
officers’ testimony that Estrada was never told she had to select one of the
photographs, Rios presents no other evidence to support an argument that the
array was suggestive.  We defer to the
trial court’s evaluation of the credibility and the demeanor of the witnesses
regarding whether Estrada was told she had to select a photograph.  See id.  Rios thus did not prove by clear and
convincing evidence that the array was impermissibly suggestive.[4]  Accordingly, we overrule Rios’s fourth issue.

 

B. 
Affirmative Finding of Guilt on Unadjudicated Extraneous Misconduct

          In
his fifth issue, Rios contends the trial court erred in failing to require the
jury to make an affirmative finding of guilt beyond a reasonable doubt as to the
unadjudicated extraneous offenses.[5]  At punishment, the State introduced evidence
of an unadjudicated extraneous offense of a similar aggravated robbery for
which Rios had been charged but not convicted. 
The trial court instructed the jury as follows:

You may consider evidence of an extraneous crime or
bad act in assessing punishment even if the defendant has not yet been charged
with or finally convicted of the crime or act. 
However, you may consider such evidence only if the extraneous crime or
bad act has been shown by the State beyond a reasonable doubt to have been
committed by the defendant or is one for which the defendant could be held
criminally responsible.

 

Rios argues under Blakely v.
Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004), that the jury should have
been required to make a specific finding beyond a reasonable doubt as a
separate part of its verdict to be clear that the jury considered the
extraneous act when assessing the sentence and found it proven beyond a
reasonable doubt.  

          If
the State offers evidence of extraneous offenses during the punishment phase of
a trial, then the court must charge the jury that it can only consider such
evidence if it finds beyond a reasonable doubt that the defendant committed the
extraneous offenses.  Tex. Code Crim. Proc. Ann. art. 37.07, §
3(a)(1) (Vernon Supp. 2004–2005) (the State may offer “any other evidence of an
extraneous crime or bad act that is shown beyond a reasonable doubt by evidence
to have been committed by the defendant or for which he could be held
criminally responsible, regardless of whether he has previously been charged
with or finally convicted of the crime or act”); see Huizar v. State,
12 S.W.3d 479, 483–84 (Tex. Crim. App. 2000) (holding there is a statutory requirement
that the jury find beyond a reasonable doubt that extraneous bad acts are
attributable to the defendant before the jury can consider them in assessing
punishment).  Huizar, however,
does not require a separate affirmative finding of guilt as to the extraneous
offense.  Id.  In addition, Blakely holds that any
fact that increases the penalty for a crime beyond the prescribed statutory
maximum, defined as the maximum the judge may impose without finding any additional
facts, must be affirmatively found by the jury beyond a reasonable doubt.  Blakely, 542 U.S. at __, 124 S. Ct. at
2536; Woods v. State, 152 S.W.3d 105, 120 (Tex. Crim. App. 2004). 

          Here,
Blakely did not require the jury to make a separate affirmative finding
of guilt on the extraneous offenses admitted during the punishment phase because
the sentence sought by the State was within the statutory maximum possible
sentence for the offense, and the jury assessed a punishment within that
maximum.  Rios was convicted of aggravated
robbery, a first degree felony carrying a penalty of no less than five years
and up to ninety-nine years or life imprisonment. Tex. Pen. Code Ann. §§ 12.32(a), 29.03(a)(2) (Vernon 2003). 
Rios was sentenced to thirty years’ imprisonment, a punishment well
within the statutory punishment range.  Accordingly,
the trial court properly denied Rios’s Blakely challenge.

C. 
Ambiguity of Parole Instruction

          In
his sixth issue, Rios contends the trial court erred in submitting an ambiguous
parole instruction to the jury.  The jury
was instructed concerning the effect of parole under Article 37.07, section
4(a) of the Texas Code of Criminal Procedure. 
Rios’s counsel objected that he “never understood why it says although
you cannot consider it, but – why even have it in there?”  The trial court overruled the objection.  On appeal, Rios contends the instruction
contained in the statute is ambiguous and confusing because “the actual ability
of a juror to not consider parole laws is completely unclear.”  

          Rios’s
arguments against the parole instruction are without merit.  First, there is no error in simply giving the
legislatively mandated parole instruction found in Article 37.07.  Luquis v. State, 72 S.W.3d 355, 363
(Tex. Crim App. 2002).  To demonstrate error,
a defendant must show there is a reasonable likelihood that the jury applied
the challenged instruction in a manner violative of due process.  Id. at 368.  We generally presume the jury followed the
trial court’s instructions as given, and we will not reverse in the absence of
evidence that the jury was actually confused by the charge.  Williams v. State, 937 S.W.2d 479, 490
(Tex. Crim. App. 1996); Bui v. State, 68 S.W.3d 830, 842 (Tex. App.—Houston
[1st Dist.] 2002, no pet.).  Here, Rios
presents no evidence that the jury was confused by or misapplied the parole
instruction, nor does he present any arguments as to why the charge itself is
confusing.  The mere fact that Rios was
eligible for community supervision because he had not been convicted of any
other felonies does not create a reasonable likelihood that the jury was
confused by or misapplied the parole instruction.  Accordingly, we hold the trial court did not
err in submitting the parole instruction to the jury.

IV.  CONCLUSION

          We
hold (1) Rios waived his argument that the State failed to give adequate notice
of its intent to use a fingerprint expert to compare fingerprints taken from
him during the trial because he did not object on that ground at trial; (2)
Rios waived any Crawford argument by failing to object on confrontation
grounds at trial; (3) the testimony of Rios’s accomplice was sufficiently
corroborated; (4) the evidence is legally sufficient to support the conviction;
(5) the evidence is factually sufficient to support the conviction; (6) Rios
did not provide clear and convincing evidence that the pretrial photo array was
impermissibly suggestive; (7) the trial court properly instructed the jury
during the punishment phase of trial on consideration of extraneous offenses; and
(8) the trial court properly submitted the statutorily required parole
instruction to the jury.  We therefore affirm
the judgment of the trial court.

 

 

 

                                                          Jane
Bland

                                                          Justice

 

Panel consists of Chief Justice
Radack and Justices Alcala and Bland.











[1] We note that the State provided notice nine months
prior to trial that it planned to call a fingerprint expert to testify to
taking and identifying unknown prints and matching them to known prints.

 





[2] In Crawford, the defendant preserved error by
objecting on confrontation grounds at trial. 
Crawford, 541 U.S. at 36, 124 S. Ct. at 1355.

 

 





[3] In issue three, we have already overruled Rios’s
complaint concerning the adequacy of the corroboration of the accomplice’s
testimony under Article 38.14 as required by Cathey v. State, 992 S.W.2d
460, 462–63 (Tex. Crim. App. 1999) (holding sufficiency review of
accomplice-witness testimony is legislatively imposed, and thus constitutional
legal and factual sufficiency standards do not apply).  Accordingly, we do not perform a traditional
legal or factual sufficiency review of that issue here.

 

 





[4] Although the trial court stated she found the array
not to be impermissibly suggestive even assuming Estrada had been told to
choose a photo, the court did not make findings of fact with regard to the
motion to suppress.  We thus uphold the
trial court on any available ground.  Willover
v. State, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).





[5] Though Rios did not object at trial, under Almanza,
we review the charge for egregious error. 
Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984); see
also Bluitt v. State, 137 S.W.3d 51, 53 (Tex. Crim. App. 2004) (“Our case
law is clear that when there is jury charge error, whether objected to or not
objected to, the standard for assessing harm is controlled by Almanza.”).