# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00028-CR

**Jaime Fernando Argudo-Rodriguez, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
### NO. D-1-DC-08-202290, HONORABLE BOB PERKINS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Following a bench trial, appellant Jaime Fernando Argudo-Rodriguez (Argudo) was convicted of the offense of making a terroristic threat to a family member, *see* Tex. Penal Code Ann. § 22.07 (West Supp. 2009), and sentenced to eight days in the Travis County jail. He argues that his right of confrontation was violated because the State introduced testimonial statements from non-testifying witnesses. He also challenges the legal and factual sufficiency of the evidence to support the conviction. We affirm the judgment of conviction.

Argudo is an Ecuadorian immigrant. He entered the United States on a student visa, studied engineering at the University of Texas, and then accepted a position with an Austin company and obtained a work visa. While he was still a student, Argudo was diagnosed with a mental disorder and prescribed medication. He took his medication as prescribed until sometime in mid- to late 2007.

On April 18, 2008, several months after Argudo had stopped taking his medication, he suffered an episode. He believed that his wife had become possessed by the devil, that she had put a hex on his penis, and that there was a poltergeist threatening his family. To be ready to respond to these perceived threats, Argudo paced the house carrying a flashlight.

Argudo's wife, frightened by Argudo's strange behavior, laid down and pretended to be asleep. Argudo stood over his wife with the flashlight, as if, according to their daughter, he was going to hit her on the back of the head. Argudo then went into the kitchen. His wife saw that he was standing in the kitchen holding a large kitchen knife. He looked at her and said: "The devil needs to die." Afraid for their safety, both Argudo's wife and their daughter went into the daughter's room. There, they called 911 so that Argudo could be taken to a hospital.

When Officer Robert Cameron, the responding officer, arrived, he found that Argudo was intoxicated. The officer detected the odor of alcohol on Argudo's breath and observed that Argudo had glassy, watery eyes. When asked, Argudo admitted that he had been drinking. Argudo told the officer that he believed that his wife was possessed and that she had put a hex on his penis. At that point, the responding officer called a mental health officer to the scene, and Argudo was ultimately arrested.

On May 22, 2008, Argudo was indicted for two counts of aggravated assault for threatening a family member with a deadly weapon. *See* Tex. Penal Code Ann. § 22.02(2) (West Supp. 2009). Following a bench trial on November 25, 2008, Argudo was convicted of the lesser included offense of making a terroristic threat to a family member, *see id.* § 22.07, and sentenced to eight days in the Travis County jail. Argudo presents two issues on appeal: (1) his

2

right to confront and cross-examine witnesses was violated when the State introduced testimonial statements by non-testifying witnesses; and (2) the evidence was legally and factually insufficient to support his conviction.

Argudo contends that his Sixth Amendment confrontation right was violated when Officer Robert Cameron was allowed to testify that Argudo's daughter had reported seeing Argudo carrying around a flashlight and using it as a weapon, and that Argudo had stood over his wife with the flashlight as if he were going to hit her. Argudo also complains that his right to confront witnesses was violated when the district court admitted an EMS worker's written assessment of Argudo's mental condition. As to both complaints, Argudo asserts that the evidence was testimonial hearsay and that its admission violated his rights under *Crawford v. Washington*, 541 U.S. 36 (2004).

Trial counsel objected to the admission of the EMS worker's written assessment but not to Officer Cameron's testimony. We, therefore, address only the complaint as to the EMS worker's assessment, as Argudo has failed to preserve error as to Cameron's testimony. *See Holland v. State*, 802 S.W.2d 696, 700 (Tex. Crim. App. 1991) (defendant waives constitutional right to confront witnesses if he does not object at trial); *Bunton v. State*, 136 S.W.3d 355, 368 (Tex. App.—Austin 2004, pet. ref'd) (same).

The Sixth Amendment provides that in all criminal prosecutions, the accused shall have the right to be confronted with the witnesses against him. U.S. Const. amend. VI. In *Crawford*, the Supreme Court held that this right applies not only to in-court testimony, but also to out-of-court statements that are testimonial in nature. 541 U.S. at 51. The Confrontation Clause forbids the

admission of testimonial hearsay unless the declarant (the witness) is unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant. *Id.* at 68. Whether a particular out-of-court statement is testimonial is a question of law. *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008). It was the State's burden, as the proponent of the challenged evidence, to establish its admissibility. *Id.* We review the trial court's ruling admitting the evidence under a bifurcated standard, giving deference to the court's findings regarding any pertinent historical facts but reviewing de novo the court's application of the law to those facts. *Wall v. State*, 184 S.W.3d 730, 742-43 (Tex. Crim. App. 2006).

The EMS report about which Argudo complains contains the EMS worker's assessment that transport of Argudo was required because Argudo was in a "psychiatric - paranoid state" and had refused treatment. Assuming without deciding that the EMS worker's assessment qualifies as testimonial evidence and its admission, therefore, violated Argudo's rights under the confrontation clause, we agree with the State that the report's admission—even if error—was harmless beyond a reasonable doubt. *See* Tex. R. App. P. 44.2(a); *Wood v. State*, 299 S.W.3d 200, 214 (Tex. App.—Austin 2009, pet. ref'd) (where there is constitutional error, conviction must be reversed unless appeals courts is "satisfied beyond a reasonable doubt that the error did not contribute to the conviction or punishment").

Here, the specific statement in dispute is that statement that Argudo was in a "psychiatric - paranoid state" and had to be transported because he had refused treatment. The evidence appears elsewhere in the record multiple times and is, in fact, undisputed. Officer Cameron testified that, when he arrived on the scene, Argudo stated that his wife was demonic, had put a

4

hex on his penis, and was able to control his brain telepathically. Argudo told Cameron that he had been prescribed medication, but had not taken it in several months. Argudo's wife also testified that Argudo had been prescribed medication, but was not taking it at the time of the incident. She stated that Argudo felt that she was possessed by the devil and that "[h]e felt that I could read his mind and was doing things." She also testified that, on the day of the incident, "[m]entally he wasn't good." At trial, Argudo also testified that he had been prescribed medication, but was not taking it at the time of the incident. He testified that he had been feeling well until about two or three weeks before the incident. As to the day of the incident, Argudo testified:

> I remember I was very disturbed by different thoughts. Because of a lot of noise around the apartment, I was thinking that probably somebody will enter the apartment and do something wrong against my family. . . . I was - fear that, you know, maybe some poltergeist can happen and my family was in need of some sort of protection.

Argudo also remembered telling Cameron that his wife had placed a hex on his penis and that: "I question my wife whether those weird things I was feeling were possibly somehow connected to her behavior, . . . whether she was somehow getting some messages from some sort of evil." Argudo testified that he has since begun taking medication and "feel[s] different right now."

In light of the undisputed evidence that Argudo was suffering from a mental condition at the time of the incident, the admission of an EMS assessment that Argudo was in a "psychiatric - paranoid state"—even if error—was harmless under these circumstances. Accordingly, we overrule Argudo's first issue.[1]

---

[1] In his briefing, Argudo complains only about the EMS report as to its assessment that he was in a "psychiatric - paranoid state." At trial, Argudo likewise objected to the report's

In his second issue, Argudo argues that the evidence is legally and factually insufficient to support the judgment of conviction. In reviewing a legal sufficiency challenge, we view the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt. *Salinas v. State*, 163 S.W.3d 734, 737 (Tex. Crim. App. 2005). The jury, as the trier of fact, "is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The jury may choose to believe or disbelieve any portion of the testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). The jury may also draw reasonable inferences from basic facts to ultimate facts. *Clewis v. State*, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).

In evaluating the factual sufficiency of the evidence, we view all the evidence in a neutral light and will set aside the verdict only if we are able to say, with some objective basis in the record, that the conviction is clearly wrong or manifestly unjust because the great weight and preponderance of the evidence contradicts the jury's verdict. *Watson v. State*, 204 S.W.3d 404, 414-17 (Tex. Crim. App. 2006). We cannot conclude that a conflict in the evidence justifies a new trial simply because we disagree with the jury's resolution of that conflict, and we do not intrude upon the fact-finder's role as the sole judge of the weight and credibility of witness testimony. *See*

admission on these grounds. To the extent that Argudo also complains about any additional statements made in the report, the evidence is cumulative of other evidence admitted at trial. *See Wood v. State*, 299 S.W.3d 200, 214 (Tex. App.—Austin 2009, pet. ref'd).

6

*id.* at 417; *Fuentes*, 991 S.W.2d at 271. The fact-finder may choose to believe all, some, or none of the testimony presented. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); *Bargas v. State*, 252 S.W.3d 876, 888 (Tex. App.—Houston [14th Dist.] 2008, no pet.). In our review, we discuss the evidence that, according to appellant, undermines the jury's verdict. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

A person commits the offense of making a terroristic threat against a family member if he "threatens to commit any offense involving violence . . . with intent to . . . place [the family member] in fear of imminent serious bodily injury." Tex. Penal Code Ann. § 22.07. Argudo contends that there was insufficient evidence of the intent element to support his conviction—there is no evidence, according to Argudo, to show that he intended to place any family member in fear of harm.

Evidence admitted at trial includes the testimony of Officer Cameron, Argudo, and Argudo's wife. Officer Cameron testified that, when he arrived on the scene, Argudo was outside the residence and stated that his wife was demonic, had put a hex on his penis, and was able to control his brain telepathically. Argudo told Cameron that he had been prescribed medication, but had not taken it in several months. When Cameron entered the residence, he found Argudo's wife shaking and in a "traumatic-type state." She told Cameron that Argudo had been acting strangely for several days and had been carrying around a flashlight as a weapon. She also told Cameron that, while she was lying on the living room floor, her daughter had seen Argudo sneaking up behind her with the flashlight as if he were going to hit her in the back of the head. Argudo's wife also reported that—at one point—Argudo had gone into the kitchen, and she saw him holding a large kitchen

7

knife.  Looking at her, he said:  "The devil needs to die."  Argudo's wife told Cameron that she felt that her life was in danger and ran into her daughter's room.  Together they called 911.

At trial, Argudo's wife testified that she was in fear because of the way Argudo was acting.  She also testified that she thought she saw him holding a knife in the kitchen and that, after that, she retreated to her daughter's room, where she and her daughter called 911.  She testified both that she was afraid because Argudo "would say things about the devil" and that Argudo thought that she was possessed by the devil.  Argudo agreed that he was suffering from a mental condition at the time of the incident, noting that he was "disturbed by different thoughts," was worried about a poltergeist, believed that his wife was possessed by the devil, and felt that she was somehow involved in the perceived evil happenings.

There is rarely direct evidence of what an accused intended, and therefore, the fact-finder must usually infer intent from circumstantial evidence.  *See Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991).  Here, it is undisputed that Argudo believed that his wife was possessed by the devil.  It is also undisputed that, at the time, Argudo thought that his wife might be responsible for causing "some sort of evil," including putting a hex on Argudo.  Evidence presented also shows that Argudo was intermittently holding items that could be used as deadly weapons in an attempt to protect himself from whatever he was perceiving.  Believing that his wife was the devil, he pronounced that "the devil needs to die."  While Argudo presented evidence that he was suffering from a mental episode, the evidence, nonetheless, shows that while in this state Argudo intended to place his wife in fear of harm.  Thus, this evidence is both legally and factually sufficient to satisfy the intent element.  Accordingly, we overrule Argudo's second issue.

8

Having overruled each of Argudo's issues, we affirm the judgment of conviction.

_____

G. Alan Waldrop, Justice

Before Chief Justice Jones, Justices Waldrop and Henson

Affirmed

Filed:   May 14, 2010

Do Not Publish

9