

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
## FORT WORTH

NOS.  2-08-442-CR
2-08-443-CR
2-08-444-CR


WENDELL MARQUISE WASHINGTON                     APPELLANT

V.

THE STATE OF TEXAS                                                   STATE

------------

FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY

------------

# OPINION

------------

## I. Introduction

Appellant Wendell Marquise Washington appeals his convictions and sentences for assault causing bodily injury to a public servant, evading arrest or detention, and delivery of a controlled substance.  He contends in five points that the evidence is factually insufficient to sustain his convictions, that his conviction and sentence for evading arrest or detention violates his rights

against double jeopardy, and that the trial court erred by sentencing him as a first-degree felon for the state jail felony of evading arrest. We affirm.

## II. Background

A grand jury indicted Appellant for two counts of assault causing bodily injury to a public servant, two counts of evading arrest using an automobile, and one count of delivery of a controlled substance. The State waived one count of the evading arrest charge, and Appellant pleaded not guilty to all remaining charges.

Officer Ronald Jeter, an undercover officer with the narcotics division of the Fort Worth Police Department, testified that he routinely participates in narcotics buy-bust operations. Officer Jeter testified that a buy-bust operation targets a location where drugs are sold in open areas, that an undercover officer will attempt to purchase narcotics, and that the undercover officer will leave the area and signal other officers to move in and arrest the individual who sold the narcotics.

During a buy-bust operation on April 23, 2008, Officer Jeter drove an undercover vehicle to a convenience store on East Rosedale Street in Fort Worth. When he arrived, he saw a white Cadillac with a person in the driver's seat and another person standing at the passenger window. As he passed the white Cadillac, the black male at the passenger window said, "Hey, man, what

do you want?" Officer Jeter testified that he told the man, "I'm looking for a 20." Officer Jeter testified that Appellant then said, "I got you," stepped out of the driver's side of the white Cadillac, and walked to the passenger side of Officer Jeter's undercover vehicle. Officer Jeter gave Appellant a twenty dollar bill, and Appellant gave Officer Jeter a blue baggie containing what appeared to be crack cocaine.[1]

Appellant then returned to the white Cadillac and sat in the driver's seat. A woman that had been across the street got into the white Cadillac on the passenger's side. Officer Jeter drove away slowly and gave the arrest signal. Some of the arrest team arrived on foot, and Sergeant Steven Enright and Corporal Charles Combs parked an unmarked, blue vehicle behind the white Cadillac to block its exit. As he watched the arrest team converge on the white Cadillac, Officer Jeter observed the white Cadillac back into the blue vehicle, turn around, and speed away.

On cross-examination, Officer Jeter testified that although the blue vehicle that Sergeant Enright and Corporal Combs used to block the white Cadillac was an unmarked car without lights on top, Sergeant Enright and Corporal Combs wore black boots, blue jeans, and "a raid vest with State's

---

[1]The substance in the blue baggie was later confirmed to be 0.14 grams of cocaine.

Gang Unit on one side, Police on the other, large police letters on the back." Officer Jeter prepared his report within hours of the incident and used the name "Kevin Jackson" in the report based on information received from other officers,[2] but he identified Appellant as the person that sold him the crack cocaine from a photograph the next day.

Officer Jeter testified that he later learned that the white Cadillac had wrecked in a ditch. After arriving at the scene of the wreck, Officer Jeter went into a nearby convenience store, spoke with the convenience store clerk, and retrieved the twenty dollar bill he had given Appellant to purchase the crack cocaine.[3] Officer Jeter also testified, however, that video footage from the convenience store showed a black female, not a black male, giving the twenty dollar bill to the clerk.

Corporal Combs testified that he wore a metal badge, a weapon, and his "raid gear" on April 23, 2008; his raid gear has "POLICE" prominently displayed on one shoulder and "gang unit" on the other shoulder. He and Sergeant Enright, who was dressed in the same manner, were parked around the corner from the convenience store when Officer Jeter signaled that he had purchased

---

[2]Corporal Combs testified that the registered owner of the white Cadillac was Kevin Jackson.

[3]Officer Jeter confirmed the serial number on the twenty dollar bill by comparing it to a photocopy of the original bill.

4

the crack cocaine from Appellant; Corporal Combs was driving, and Sergeant Enright was in the passenger seat. With the red and blue lights flashing, Corporal Combs pulled the unmarked, blue police car into the convenience store parking lot and parked approximately fifteen to twenty feet behind Appellant's white Cadillac. Officer Allen approached the white Cadillac on foot, with his weapon drawn, yelling "Fort Worth Police."

Sergeant Enright exited the vehicle and stood outside the police car, behind the door. Corporal Combs testified that he was exiting the vehicle, with one foot outside the door, when Appellant drove the white Cadillac backward "at a high rate of speed." He stated, "[Appellant] hit the front of our car, and it threw me up over the front steering wheel because I was kind of stepping to get out of the car, so I did not even see the car coming at us." He said the collision was hard enough to throw him over the steering wheel, wedge his head between the windshield and dash, and slam him back into the seat; he testified, "I was dazed[,] and it knocked the wind out of me." Corporal Combs testified that he felt pain in his chest, that he could not breathe, and that he hit his head hard enough that he "couldn't realize exactly just what had happened." Corporal Combs did, however, watch the white Cadillac drive away and testified that "it was probably on its way to well over a hundred miles an hour."

5

On cross-examination, Corporal Combs agreed that someone in front of the unmarked, blue vehicle could not see what was written on the back of his raid gear and probably could not see the writing on the front of his raid gear because the dashboard was still in front of him. Corporal Combs testified, however, that Sergeant Enright had completely exited the vehicle and was standing up at the time of the collision. Corporal Combs testified that he and Sergeant Enright arrived before Officer Allen approached the white Cadillac from the front, that he could see Officer Allen, the wording on his vest, and his firearm, and that he could hear Officer Allen yelling at Appellant. He also testified that Appellant turned as he was backing up and looked directly at him and Sergeant Enright.

Sergeant Enright testified that once Corporal Combs pulled the unmarked, blue police car into the parking lot, he started exiting the vehicle, saw Officer Larry Carnes approaching the white Cadillac on foot with his weapon drawn, and heard Officer Carnes yelling, "Fort Worth Police. Show me your hands."[4] Sergeant Enright testified that as he exited the car, he saw the Cadillac's reverse lights come on and the driver look backward over his right shoulder and

---

[4]Officer Carnes testified that as he approached the white Cadillac, a citizen's vehicle backed out of a parking space and was between him and the white Cadillac in a way that blocked the forward movement of the Cadillac.

accelerate the Cadillac toward the blue police car. Sergeant Enright testified that he was still standing behind the door of the police car and that the impact between the Cadillac and the police car caused the door to hit him and throw him backward three or four feet.[5] After being knocked backward, Sergeant Enright ran forward toward the Cadillac, saw that the passenger window was open, drew his weapon toward Appellant, and told Appellant to stop. Sergeant Enright testified that he was six to seven feet from Appellant when he told him to stop, that Appellant ducked down and raised his arm in a defensive position as if he were about to be shot, that Appellant did not stop, and that Appellant instead accelerated the Cadillac and drove away at a high rate of speed. He testified that the white Cadillac's tires were squealing, that the car was kicking up dirt, and that the speed was dangerously excessive.

Officer Mark Reese testified that following Appellant's arrest on April 24, 2008, he transported Appellant to jail. Officer Reese testified that during the transport, Appellant initiated conversation with him and said, "I was nervous. I don't know why I ran. Probably because I was going to catch a delivery charge."

---

[5]Sergeant Enright said he did not initially feel any pain but later felt pain and stiffness in his chest, neck, and shoulder from the impact.

At the conclusion of the guilt-innocence phase, the jury found Appellant guilty of both counts of assault causing bodily injury to a public servant, the sole count of evading arrest using an automobile with an affirmative deadly weapon finding, and the sole count of delivery of a controlled substance. Appellant elected to have the trial court determine his punishment, and the trial court sentenced Appellant to thirty years' confinement for each count of assault, forty years' confinement for evading arrest or detention,[6] and ten years' confinement for delivery of a controlled substance, with all sentences to run concurrently. Appellant timely filed notice of these appeals.

### III. Sufficiency of the Evidence

In his third, fourth, and fifth points, Appellant contends that the evidence is factually insufficient to sustain his convictions. Although Appellant does not differentiate between legal and factual sufficiency within his arguments, Appellant cites cases addressing only the factual sufficiency of evidence. *See Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996); *Ward v. State*, 48 S.W.3d 383 (Tex. App.—Waco 2001, no pet.). Thus, we address only the factual sufficiency of the evidence. *See* Tex. R. App. P. 38.1, 47.1.

---

[6]The trial court enhanced the punishment range for the evading arrest conviction first with the deadly weapon finding and second with the habitual offender finding.

## A. Standard of Review

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Steadman v. State*, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust. *Steadman*, 280 S.W.3d at 246; *Watson*, 204 S.W.3d at 414–15, 417. To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, although legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

Unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the factfinder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000); *see Steadman*, 280 S.W.3d at 246. Evidence is always factually sufficient when it preponderates in favor

of the conviction. *Steadman*, 280 S.W.3d at 247; *see Watson*, 204 S.W.3d at 417.

B. Assault

Appellant argues in his third point that the evidence is factually insufficient to support his convictions for assault causing bodily injury to a public servant. Specifically, he contends that the white Cadillac was backing up "to avoid a civilian vehicle which had blocked its path and in the words of one of the officers was 'unintentional.'"

1. Applicable Law

A person commits the offense of assault on a public servant if he intentionally, knowingly, or recklessly causes bodily injury to a person the actor knows is a public servant while the public servant is lawfully discharging an official duty. *See* Tex. Penal Code Ann. § 22.01(a)(1), (b)(1) (Vernon Supp. 2009). Here, the jury found Appellant guilty of recklessly causing bodily injury to Corporal Combs and Sergeant Enright.

2. The Evidence is Factually Sufficient

Given Appellant's contention that he "unintentionally" backed into the police vehicle, we note that the record is unclear as to whether Officer Jeter testified that Appellant unintentionally backed into the police vehicle or that the civilian vehicle unintentionally blocked Appellant's white Cadillac. During the

10

State's direct examination of Officer Jeter, and referring to a blue car drawn onto an aerial photograph of the convenience store parking lot, the following exchange occurred:

> Q. And there is an additional car that is drawn in on that photo, and do you know what that car represents?
>
> A. That was a citizen that was attempting to pull out of the parking lot. And when he attempted to leave at first, they unintentionally blocked him; therefore, he backed up into the police car.

And during cross-examination by Appellant's counsel, Officer Jeter testified:

> Q. Now, earlier when you were being asked questions about the blue vehicle on State's Exhibit 29 that backed out, you indicated the other vehicle that was still there basically unintentionally moved back to avoid striking the vehicle that was pulling out; is that right?
>
> A. Sir? I'm sorry.
>
> Q. Well, on State's Exhibit 29 there's a blue vehicle that's parked face-in to one of the stores?
>
> A. Yes, sir.
>
> Q. . . . You indicated that when the blue vehicle in [State's Exhibit] 29 pulled back that this vehicle moved back so as to avoid a contact of the vehicle pulling out unintentionally; is that right?
>
> A. Was that my wording?
>
> Q. That's what I'm asking you.
>
> A. The white Cadillac.
>
> Q. Pulled back?

11

A. Backed up, yes, sir.

Q. Just unintentionally to avoid the collision, right?

A. I have no idea if it was unintentional or not.

Q. I'm just asking you, did you ever use that word "unintentional"?

A. I might have, yes, sir.

A neutral reading of Officer Jeter's testimony could possibly suggest either that the blue civilian vehicle unintentionally blocked Appellant's white Cadillac by backing up or that Appellant unintentionally backed the white Cadillac into the police car parked behind him. Further, the jury heard other testimony that Appellant may not have known Corporal Combs and Sergeant Enright were police officers before he backed the white Cadillac into their unmarked police car. For example, Corporal Combs agreed that someone in the white Cadillac probably could not see what was written on the back of his raid gear and probably could not see the writing on the front of his raid gear because of the dashboard.

However, the jury heard other testimony that supports Appellant's convictions. The jury heard testimony that Corporal Combs and Sergeant Enright were wearing their "raid gear," that they parked fifteen to twenty feet behind Appellant's white Cadillac with the unmarked car's red and blue lights flashing, that both officers had exited or partially exited the car before the

12

collision, that Officers Allen and Carnes were approaching Appellant's vehicle from the front yelling, "Fort Worth Police" and "Show me your hands," that Corporal Combs and Sergeant Enright parked before Officer Allen approached the white Cadillac from the front, and that Appellant looked over his right shoulder at Corporal Combs and Sergeant Enright as he was backing up. Corporal Combs testified that the white Cadillac "backed up at a high rate of speed and hit the front of our car."

Viewing the evidence in a neutral light, we conclude the jury could have found beyond a reasonable doubt that Appellant recklessly caused bodily injury to Sergeant Enright and Corporal Combs, persons Appellant knew to be public servants lawfully discharging an official duty. *See* Tex. Penal Code Ann. § 22.01(a)(1), (b)(1). Therefore, we cannot say that the evidence is so weak that the jury's determination is clearly wrong or manifestly unjust or that the conflicting evidence so greatly outweighs the evidence supporting the convictions that the jury's determination is manifestly unjust. *See Lancon v. State*, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008); *Watson*, 204 S.W.3d at 414–15, 417. Accordingly, we hold that the evidence is factually sufficient to support the jury's verdict, and we overrule Appellant's third point.

C. Evading Arrest

Appellant contends in his fourth point that the evidence is factually insufficient to support his conviction for evading arrest or detention. Specifically, Appellant argues that, at the time of his arrest, he "displayed injuries and informed the police that these had been recently given to him when he had been kidnapped, shot at and pistol whipped [sic] by several other persons because he had been unable to pay them what he owed them." He further contends that "[n]o effort to discredit that story was ever made."

1. Applicable Law

A person commits the state jail felony offense of evading arrest if he intentionally flees, in a vehicle, from a person that he knows is a peace officer lawfully attempting to arrest or detain him. *See* Tex. Penal Code Ann. § 38.04(a), (b)(1) (Vernon Supp. 2009); *Guillory v. State*, 99 S.W.3d 735, 741 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd).

2. The Evidence is Factually Sufficient

Officer Smith testified that he obtained information from Appellant's wife suggesting that Appellant had been kidnapped and pistol-whipped, but he also testified that Appellant was not able to provide any information about the make, model, size, or color of the vehicle he was allegedly thrown into and that Appellant did not provide any description of the alleged kidnapper. The jury

14

could have found the information about the alleged kidnapping to not be credible.

The jury also heard testimony that Sergeant Enright exited the unmarked, blue police car wearing raid gear as the arrest team converged on Appellant's white Cadillac; that Appellant backed the white Cadillac into the unmarked vehicle, turned around, and sped away; that Sergeant Enright ran toward the white Cadillac, saw that the passenger window was open, drew his weapon toward Appellant, and told Appellant to stop; and that Appellant did not stop and instead drove away at a dangerously excessive speed. Moreover, Officer Reese testified that Appellant told him, "I was nervous. I don't know why I ran. Probably because I was going to catch a delivery charge."

Viewing all the evidence in a neutral light, we conclude the jury could have found beyond a reasonable doubt that Appellant, using a vehicle, intentionally fled from Sergeant Enright, a person Appellant knew to be a peace officer lawfully attempting to arrest or detain him. *See* Tex. Penal Code Ann. § 38.04(a), (b)(1); *Guillory*, 99 S.W.3d at 741. Therefore, we cannot say that the evidence is so weak that the jury's determination is clearly wrong or manifestly unjust or that the conflicting evidence so greatly outweighs the evidence supporting the conviction that the jury's determination is manifestly unjust. *See Lancon*, 253 S.W.3d at 704; *Watson*, 204 S.W.3d at 414–15,

15

417. Accordingly, we hold that the evidence is factually sufficient to support the jury's verdict, and we overrule Appellant's fourth point.

## D. Delivery of a Controlled Substance

Appellant argues in his fifth point that the evidence is factually insufficient to support his conviction for delivery of a controlled substance because "[t]he record reveals that when [Officer] Jeter dealt drugs[,] he did so with the driver of the vehicle. The driver of the vehicle then went into the store and was never seen again."

### 1. Applicable Law

A person commits the state jail felony of delivery of a controlled substance if the person knowingly possesses with intent to deliver a controlled substance in the amount of less than one gram. *See* Tex. Health & Safety Code Ann. § 481.112(a), (b) (Vernon 2010). Cocaine is a controlled substance. *See id.* § 481.102(3)(D) (Vernon 2010).

### 2. The Evidence is Factually Sufficient

Officer Jeter testified that as he arrived at the convenience store, he saw a white Cadillac with a person in the driver's seat and a person standing at the passenger window, conversing with the person inside the Cadillac. The black male at the passenger window said, "Hey, man, what do you want?" Officer Jeter told the man, "I'm looking for a 20," and Appellant said, "I got you" and

16

stepped out of the driver's side of the Cadillac, walked to the passenger side of Officer Jeter's vehicle, and gave Officer Jeter a blue baggie containing crack cocaine after Officer Jeter gave him a twenty dollar bill. Appellant then returned to the white Cadillac and got in on the driver's side. Officer Jeter made an in-court identification of Appellant as the person who sold him the cocaine. The jury also heard testimony that Appellant told Officer Reese, "I don't know why I ran. Probably because I was going to catch a delivery charge." The record does not support Appellant's contention that the driver of the white Cadillac "went into the store and was never seen again."

Viewing all the evidence in a neutral light, we conclude the jury could have found beyond a reasonable doubt that Appellant intentionally or knowingly delivered less than one gram of cocaine to Officer Jeter. *See* Tex. Health & Safety Code Ann. §§ 481.102(3)(D), .112(a), (b). Therefore, we cannot say that the evidence is so weak that the jury's determination is clearly wrong or manifestly unjust or that the conflicting evidence so greatly outweighs the evidence supporting the conviction that the jury's determination is manifestly unjust. *See Lancon*, 253 S.W.3d at 704; *Watson*, 204 S.W.3d at 414–15, 417. Accordingly, we hold that the evidence is factually sufficient to support the jury's verdict, and we overrule Appellant's fifth point.

17

IV.  Collateral Estoppel and Double Jeopardy

Appellant contends in his first point that collateral estoppel and double jeopardy bar his conviction for evading arrest.  He argues that the trial court erred by adjudicating him guilty of evading arrest because the evading arrest offense occurred simultaneously with, and was subsumed within, the assault convictions.[7]

A.  Applicable Law

The Double Jeopardy Clause of the United States Constitution provides that no person shall be subjected to twice having life or limb in jeopardy for the same offense.  U.S. Const. amend. V.  Generally, this clause protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense.  *Brown v. Ohio*, 432 U.S. 161, 165, 97 S. Ct. 2221, 2225 (1977); *Ex parte Cavazos*, 203 S.W.3d 333, 336 (Tex. Crim. App. 2006).

---

[7]To the extent Appellant argues that he was punished multiple times for the same conduct, we overrule his argument as inadequately briefed.  *See* Tex. R. App. P. 38.1(i).  We also note that evading arrest is not a lesser-included offense of assault on a public servant and that both the assault and evading arrest statutes specifically authorize multiple prosecutions if the conduct violates that and another provision of the penal code.  *See Warren v. State*, 98 S.W.3d 739, 743–44 (Tex. App.—Waco 2003, pet. ref'd); *see also* Tex. Penal Code Ann. §§ 22.01(g), 38.04(d).

To determine whether both offenses are the same, we must examine the elements of the applicable statutes to determine whether each statute "requires proof of an additional fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 182 (1932); *see United States v. Dixon*, 509 U.S. 688, 696, 113 S. Ct. 2849, 2856 (1993); *Parrish v. State*, 869 S.W.2d 352, 353–55 (Tex. Crim. App. 1994). When resolving whether two offenses are the same for double jeopardy purposes, we focus on the elements alleged in the charging instrument. *Bigon v. State*, 252 S.W.3d 360, 370 (Tex. Crim. App. 2008). Separate convictions for different offenses arising from a single criminal transaction do not violate the prohibition against double jeopardy. *See Haight v. State*, 137 S.W.3d 48, 50–51 (Tex. Crim. App. 2004); *see also Hobbs v. State*, 175 S.W.3d 777, 779 (Tex. Crim. App. 2005) (discussing continuous offense of evading arrest).

B. Analysis

1. Collateral Estoppel

Citing *Ashe v. Swensen*, Appellant argues that the doctrine of collateral estoppel bars his conviction for evading arrest. *See* 397 U.S. 436, 443–45, 90 S. Ct. 1189, 1194–95 (1970). However, "the *Ashe* doctrine of collateral estoppel only applies where there are two trials, and not where a single trial involving two counts is involved." *Ward v. State*, 938 S.W.2d 525, 528 (Tex.

App.—Texarkana 1997, pet. ref'd) (citing *Hite v. State*, 650 S.W.2d 778, 784 n.7 (Tex. Crim. App. 1983)).  Appellant was tried for multiple offenses in a single trial.  Thus, collateral estoppel does not apply.  *See Hite*, 938 S.W.2d at 784 n.7; *Ward*, 938 S.W.2d at 528.

2.  Double Jeopardy

Appellant also argues that double jeopardy bars his conviction because "the evading arrest was completely subsumed and was part and parcel of the assault[s]."  The State counters that double jeopardy does not bar the convictions because the assault offenses and the evading arrest offense are different offenses and require proof of several different elements.

We focus on the elements alleged in the charging instrument to determine whether two offenses are the same for double jeopardy purposes.  *Bigon*, 252 S.W.3d at 370.  Under the charging instruments, the assault-on-a-public-servant convictions required proof that Appellant intentionally or knowingly caused bodily injury to Corporal Combs and Sergeant Enright by using an automobile, that Corporal Combs and Sergeant Enright were public servants lawfully discharging an official duty, and that Appellant knew Corporal Combs and Sergeant Enright were public servants.  The evading arrest conviction required proof that Appellant used a vehicle to intentionally flee from Sergeant Enright and that Appellant knew that Sergeant Enright was a peace officer

20

attempting to lawfully arrest or detain him. The assault convictions required proof of bodily injury to Corporal Combs and Sergeant Enright, but the evading arrest conviction did not. The evading arrest conviction required proof that Appellant intentionally fled, but the assault convictions did not. Thus, each offense required proof of at least one fact that the other offense did not. *See Ortega v. State*, 171 S.W.3d 895, 899–900 (Tex. Crim. App. 2005) (holding offenses of assault on a public servant and resisting arrest were not the same for double jeopardy purposes because they each required proof of at least one fact that the other did not).[8] We hold that the offenses of assault on a public servant and the offense of evading arrest were not the same in this case. *See id.; see also Mallett v. State*, 65 S.W.3d 59, 68 (Tex. Crim. App. 2001)

---

[8]In *Ortega*, the court of criminal appeals stated:

> The offense of assault required proof of at least one fact that the offense of resisting arrest did not: that the appellant caused bodily injury. The offense of resisting arrest required proof of a fact that the offense of assault did not: that the appellant prevented or obstructed a peace officer from effecting an arrest.

> By the *Blockburger* rule, the offenses were not the same. There was no violation of the Double Jeopardy Clause.

*Id.* at 900; *see also Blockburger*, 284 U.S. at 304, 52 S. Ct. at 182 ("The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.").

21

(holding that convictions for aggravated assault against a public servant and criminal mischief did not violate double jeopardy because each offense required proof of an element that the other did not).  We overrule Appellant's first point.

## V.  Sentencing

Appellant argues in his second point that the trial court erred by improperly sentencing him as a first degree felon for the state jail felony of evading arrest.  He also contends that he could not be sentenced as a first-degree felon because the indictment gave notice of enhancement to only a second degree felony, not a first degree felony.

As applied in this case, evading arrest or detention is a state jail felony because Appellant used a vehicle to flee and had not been previously convicted of evading arrest.  *See* Tex. Penal Code Ann. § 38.04(b)(1)(B).  Appellant cites three cases and argues that he was improperly sentenced as a first-degree felon because state jail felonies cannot be enhanced to habitual felonies.  However, two of the cited cases did not involve an aggravating element such as the deadly weapon finding in this case, and the third case was later overruled by the issuing court.  *See Ester v. State*, 941 S.W.2d 297, 300 (Tex. App.—Tyler 1996, pet. ref'd) (op. withdrawn on denial of reh'g) (holding the appellant's sentence could not be enhanced because there was no deadly weapon finding, and the habitual offender enhancement did not apply); *State v. Warner*, 915

22

S.W.2d 873, 879 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd) (holding "that the legislature did not intend for state jail felonies to be enhanced to habitual offender status pursuant to section 12.42(d)"), *overruled by Smith v. State*, 960 S.W.2d 372, 375 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd); *State v. Mancuso*, 903 S.W.2d 386, 387–88 and 387 n.3 (Tex. App.—Houston [1st Dist.] 1995) (holding state jail felony could not be enhanced for habitual offender and noting absence of evidence of deadly weapon or applicable prior convictions), *aff'd*, 919 S.W.2d 86 (Tex. Crim. App. 1996). Thus, these cases do not support Appellant's contention.

Appellant was convicted of the state jail felony offense of evading arrest, the jury made an affirmative deadly weapon finding, and the trial court found the habitual offender allegation true. Appellant argues that his sentence is illegal because "[e]nhancement of [s]tate [j]ail felonies is solely had under Tex. Penal Code [sections] 12.35(c) and 12.42(a) and not under [section] 12.42(d)." To address Appellant's argument, it is necessary to consider the text of penal code sections 12.35(a), 12.35(c)(1), 12.42(a), and 12.42(d).

Penal code section 12.35(a) states: "(a) *Except as provided by Subsection (c)*, an individual adjudged guilty of a state jail felony shall be punished by confinement in a state jail for any term of not more than two years or less than

23

180 days." Tex. Penal Code Ann. § 12.35(a) (Vernon Supp. 2009) (emphasis added). Penal code section 12.35(c)(1) states:

> (c) An individual adjudged guilty of a state jail felony *shall be punished for a third degree felony* if it is shown on the trial of the offense that:
>
> > (1) *a deadly weapon as defined by Section 1.07 was used or exhibited during the commission of the offense* or during immediate flight following the commission of the offense, and that the individual used or exhibited the deadly weapon or was a party to the offense and knew that a deadly weapon would be used or exhibited.

*Id.* § 12.35(c)(1) (emphasis added). Appellant could not be punished under 12.35(a) because the deadly weapon finding made section 12.35(c)(1) the applicable punishment provision. *See id.* § 12.35(a), (c)(1). Thus, the trial court properly enhanced the applicable punishment range of Appellant's state jail felony to that of a third degree felony under section 12.35(c)(1). *See id.* § 12.35(c)(1).

The next issue is whether the trial court should have sentenced Appellant under section 12.42(a) or section 12.42(d). Penal code section 12.42(a) states:

> (1) If it is shown on the trial of a state jail felony *punishable under Section 12.35(a)* that the defendant has previously been finally convicted of two state jail felonies, on conviction the defendant shall be punished for a third-degree felony.

24

(2) *If it is shown on the trial of a state jail felony punishable under Section 12.35(a)* that the defendant has previously been finally convicted of two felonies, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction the defendant shall be punished for a second-degree felony.

(3) Except as provided by Subsection (c)(2),[9] if it is shown on the trial of a state jail felony *punishable under Section 12.35(c)* or on the trial of a third-degree felony that the defendant has been *once before convicted of a felony*, on conviction he shall be punished for a second-degree felony.

*Id.* § 12.42(a) (Vernon Supp. 2009) (emphasis added). Subsections 12.42(a)(1) and (a)(2) do not apply because they expressly apply to persons convicted under section 12.35(a), and Appellant could not be sentenced under section 12.35(a) because of the deadly weapon finding. *See id.* §§ 12.35(a), (c)(1), 12.42(a)(1), (2). In addition, section 12.42(a)(3) does not apply because Appellant had been previously convicted of more than one felony. *See id.* § 12.42(a)(3). Thus, contrary to Appellant's contention, he could not be sentenced under section 12.42(a).

Next, we must determine whether the trial court properly sentenced Appellant under penal code section 12.42(d), which provides:

--------

[9]Section 12.42(c)(2) does not apply here because Appellant was not convicted of an offense listed under that subsection. *See id.* § 12.42(c)(2).

Except as provided by Subsection (c)(2),[10] if it is shown on the trial of a felony offense *other than a state jail felony punishable under Section 12.35(a)* that the defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction he shall be punished by imprisonment in the Texas Department of Criminal Justice for life, or for any term of not more than 99 years or less than 25 years.

*Id.* § 12.42(d) (Vernon Supp. 2009) (emphasis added). The trial court found that Appellant had been convicted of two felony offenses meeting the requirements of section 12.42(d), and as stated, Appellant could not be punished under section 12.35(a) because of the deadly weapon finding. *See id.* § 12.35(a), (c)(1). Moreover, section 12.42(d) does not exclude any state jail felonies other than those punishable under 12.35(a). *See id.* § 12.42(d). Thus, the trial court properly enhanced Appellant's punishment range to that of a first degree felony by applying section 12.42(d). *See id.* § 12.42(d).

The court in *Bunton v. State* addressed a similar scenario. *See* 136 S.W.3d 355, 361–62 (Tex. App.—Austin 2004, pet. ref'd). There, a grand jury indicted Bunton for the state jail felony of evading arrest while using a motor vehicle. *Id.* at 361. The indictment also alleged the use of a motor vehicle as a deadly weapon and an habitual criminal notice for two prior felony

---

[10] *See supra* note 9.

26

convictions. *Id.* at 362. Bunton argued that the trial court erred by authorizing the jury to assess his punishment under section 12.42(d) of the penal code. *Id.* at 360–61. The court disagreed, stating,

> the legislature could have exempted all state jail felonies from the habitual criminal status in section 12.42(d). The legislature, however, expressly exempted only those state jail felonies punishable under section 12.35(a), often described by case law as non-aggravated offenses. By doing so, the legislature made aggravated state jail felonies punishable under the provisions of section 12.35(c) subject to the habitual criminal provisions of section 12.42(d).

*Id.* at 363; *see also Smith*, 960 S.W.2d at 374 (holding that "an aggravated state jail felony may be enhanced by two prior convictions in the proper sequence to habitual offender status" under penal code section 12.42(d)). Thus, the *Bunton* court held that there was "no merit in [Bunton's] claim that fundamental error occurred in the jury charge at the punishment phase of the trial when the trial court instructed the jury on the range of punishment under section 12.42(d)." *Bunton,* 136 S.W.3d at 363. We hold that the trial court did not err by sentencing Appellant under penal code section 12.42(d) in this case.

To the extent Appellant contends that the habitual offender notice in the indictment did not give him sufficient notice that the State sought to enhance his punishment to that of a first degree felony because the indictment stated,

27

"State Jail Felony Enhancement – 2nd Degree Felony Notice," we note that the remainder of the habitual offender paragraph alleged two prior felony offenses and that the indictment also included a deadly weapon allegation. The habitual offender and deadly weapon allegations, if proven, removed the possibility that Appellant could be punished as a second-degree felon. *See* Tex. Penal Code Ann. § 12.42(a)(2), (3). In *Ex parte Beck*, the court of criminal appeals stated,

> The penal laws are fraught with offenses that have a higher penalty range when an additional fact, which is not necessary to prove the offense, is pled in the charging instrument. Although the additional fact must be pled in the indictment . . . the effect of that fact on punishment need not be pled.

769 S.W.2d 525, 527 n.2 (Tex. Crim. App. 1989). Because the face of the indictment alleged two prior felony offenses and the use of a deadly weapon, and because Appellant was not eligible for punishment under sections 12.35(a) or 12.42(a)(2) and (3) if the habitual offender and deadly weapon allegations were proven true, we hold that Appellant had sufficient notice that the State sought enhancement of his punishment to that of a first degree felony. *See Bunton*, 136 S.W.3d at 364 (noting precedent that alleging two prior felony convictions on face of indictment provides sufficient notice in non-state jail felony cases). We overrule the remainder of Appellant's second point.

## VI.  Conclusion

Having overruled each of Appellant's five points, we affirm the trial court's judgments.

ANNE GARDNER
JUSTICE

PANEL:  LIVINGSTON, C.J.; GARDNER and MEIER, JJ.

PUBLISH

DELIVERED: August 31, 2010